[Civ. No. 40762. Second Dist., Div. Five. May 4, 1973.]

THOMAS R. TOOHEY, SR., Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD and
PABST BREWING COMPANY, Respondents.

**COUNSEL**

Brundage & Roseman and Harvey Reichard for Petitioner.

Grancell, Kegel & Tobin, John J. Tobin and Stuart J. Liebman for Respondents.

**OPINION**

**STEPHENS, J.**—On April 20, 1972, the Workmen's Compensation Appeals Board issued its award and findings that applicant sustained multiple injuries arising out of and occurring in the course of his employment and that applicant had sustained a permanent disability of 71 percent. The

applicant and the respondent employer both filed petitions for reconsideration: the applicant contended that the referee had failed to set forth all of the factors of disability as required by law, and that there was no substantial evidence to support the referee's finding that applicant had sustained only a 71 percent permanent disability; the respondent employer contended that applicant's injury did not arise out of and occur in the course and scope of his employment because he was crossing the street to obtain his lunch from his car on a paid beer break at the time he was injured. On July 6, 1972, the board issued an opinion and orders denying applicant's petition for reconsideration and granting respondent's petition; the board found that applicant did not sustain an injury arising out of and occurring in the course and scope of his employment.

Applicant petitions for a writ of review, contending: (1) that the board acted without and in excess of its powers in reversing the trier of fact on the issue of whether or not applicant's injury arose out of and occurred in the course and scope of his employment; (2) that the opinion and orders denying his petition and granting respondent's petition for reconsideration and the board's decision after reconsideration are unreasonable; (3) that the opinion and orders are not supported by substantial evidence.

On the date of his injury, petitioner was employed by the Pabst Brewing Company. During working hours and at the time of one of his seven-minute hourly beer breaks which were authorized and paid for by respondent employer, petitioner decided to go to his car, which was parked directly across the gate from the respondent's premises, to retrieve his lunch. Petitioner testified that at the time of this beer break he saw his foreman, McGinnis, and requested and obtained permission from McGinnis to obtain his lunch from his car. Petitioner then proceeded to leave his work station, walked out through the gate, and started to cross the street, when he was struck by a hit-and-run driver and sustained multiple injuries.

Foreman McGinnis testified that he had knowledge of the fact that some of the employees would leave and "go past the plant gate" during the lunch break, or any other break. He did not recall that petitioner had asked permission of him to go to his car to get his lunch, and was sure that he would have remembered it had petitioner requested permission to leave the premises. He testified that had petitioner, at the time of his break, requested permission to "run across the street and get [his] lunch," he probably would have given his permission. McGinnis was asked if he himself ever went out the plant gate during working hours, either lunch, or break, and he replied that he did, and that he later received a "verbal reprimand."

The respondent company's rule in effect at the time of the accident was that an employee was required to obtain permission of his supervisor to leave the plant premises during working hours, and this was posted in a conspicuous place adjacent to the time clock, as well as included in the employee's handbook which was distributed to the employees. There was conflicting testimony as to the extent of the enforcement of this rule. Another of respondent's employees at that time (John Joseph Close) testified at the hearing that he had been employed at Pabst for four years; that he had left the premises during beer breaks and lunch breaks and had also observed others leaving during these breaks; that he was never fined, suspended, or docked for leaving the premises; that he never punched in or punched out when he left the premises during the day, and he was never criticized for not doing this.

Respondent's witness (William Donald Hayes), a superintendent, testified that the rule is set forth in a handbook which is given to employees when they are hired and is posted on bulletin boards, and conceded that this rule is not enforced as to lunch time, but only as to beer breaks. He also conceded that the notice which was placed on the bulletin boards prohibited employees from leaving their job at any time during working hours, including lunch time, and acknowledged that there was never any notification posted which advised employees they could leave the premises during lunch period but not at any other time. Superintendent Hayes further testified that assuming permission was requested and obtained from the foreman, it would be perfectly all right to leave the premises during beer breaks. He also testified that there is a company rule requiring punching in and out which applies to both noontime and beer breaks but it is not enforced as to either the noontime or the beer break. As to the rule of obtaining permission from the supervisor, Hayes testified it was enforced "during working hours" but not "during lunch time." He prepared the bulletin which stated: "Any employee leaving his job during working hours must obtain permission from his supervisor. He must punch his time card out should he leave the premises during working hours, including lunch times, and in again on return." In regard to other regulations (eating, drinking and smoking), Hayes testified that certain aspects were enforced and certain were not. Hayes was then asked: "Has this ever been put on the bulletin to tell the employees, 'We are not enforcing that part of our rules'? Has this ever been posted?" Hayes' response: "No, sir."

 The issue revolves around the "personal comfort" (*State Comp. Ins. Fund* v. *Workmen's Comp. App. Bd.*, 67 Cal.2d 925, 928 [64 Cal. Rptr. 323, 434 P.2d 619]) or the "personal convenience or comfort" (*Nichols* v. *Workmen's Comp. App. Bd.*, 269 Cal.App.2d 598, 600 [75

Cal.Rptr. 226]) rule. The rationale of the stated rule is that the consumer of labor takes his employees with their need for such conveniences and that there are some deviations from the path of duty that are so minor that they should not be considered outside the course of employment, particularly when the "convenience" (i.e., the partaking of sustenance) is one which provides some benefit to the employer. The consideration that apparently concerned the board is that Toohey left the premises and incurred a type of risk that was not inherent in his work as a bottler. In other words, the board invoked what appears to be a "mini" version of the "coming and going rule." Heretofore, that criterion has not been applied in the coffee (beer)-break cases. While there is adequate evidence to sustain the board's conclusion that Toohey did not ask permission of his foreman to cross the street to obtain his lunch from his parked car, the evidence is uncontroverted that permission would have been granted had the request been made. Here, "failure to ask" exclusion from coverage under workmen's compensation would favor form over substance. Respondent argues that Toohey "could have left the premises during the lunch break and obtained his lunch and returned to consume it, and there would have been no enforced rule which would have been violated and no permission would have been necessary from the supervisor." There is no contention that the "beer break" did not give adequate time within which Toohey could have run his errand; therefore, we see no rational difference between his obtaining the lunch during the "beer break" and accomplishing the same act during the "lunch break." Certainly, nothing more than a verbal reprimand would have been forthcoming for the slight infraction of the rule. The purpose of Toohey's brief absence from the plant premises was well within the "comfort" rule. (See *Western Greyhound Lines* v. *Industrial Acc. Com. (Brooks),* 225 Cal.App.2d 517 [37 Cal.Rptr. 580]; *Workmen's Compensation: The Personal Comfort Doctrine* (1960) Wis. L.Rev. 91.) In the present case, the evidence is that the acts of Toohey, although not encouraged, would be tolerated. Under such circumstances, and in the light of the established principle of liberal construction in favor of the employee, we find that the injury was incurred during the course of employment and is compensable.

The order denying petitioner's claim is annulled, and the case is remanded for further proceedings consistent with the views expressed in this opinion.

Kaus, P. J., and Ashby, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied June 28, 1973.