[Civ. No. 43543. Second Dist., Div. One. June 28, 1974.]

JOSE G. LIZAMA, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
GOLETA LEMON ASSOCIATION et al., Respondents.

**364**

**COUNSEL**

Ghitterman, Eskin, Schweitzer & Herreras and William A. Herreras for Petitioner.

T. Groezinger, James J. Vonk, George S. Bjornsen and Glenn W. Groene-wold for Respondent.

**OPINION**

**LILLIE, Acting P. J.**—The single issue is whether petitioner's injury arose out of and occurred in the course of his employment. The referee found that it did and awarded medical and continuing temporary disability bene-fits; the appeals board held that it did not and vacated the award. His subsequent petition for reconsideration was denied by the board. On his petition for review we issued a writ in discharge of the duty impliedly im-posed upon this court to assure (1) that the referee's finding of compen-sability was accorded the "great weight" to which it was entitled, and (2) that the ultimate negative result reached by the board was "supported by substantial evidence in the light of the entire record." (*Lamb* v. *Workmen's Comp. Appeals Bd.,* 11 Cal.3d 274, 281 [113 Cal.Rptr. 162, 520 P.2d 978]; *Garza* v. *Workmen's Comp. App. Bd.,* 3 Cal.3d 312, 318-319 [90 Cal.Rptr. 355, 475 P.2d 451]; *Le Vesque* v. *Workmen's Comp. App. Bd.,* 1 Cal.3d 627, 635 [83 Cal.Rptr. 208, 463 P.2d 432].) After review of the entire record it appears to us that any difference in views of the evidence between the referee and the appeals board has been substantially resolved or, in any event, is not determinative. The question of compensability thus becomes one of law. (*Ross* v. *Workmen's Comp. Appeals Bd.,* 21 Cal. App.3d 949, 955 [99 Cal.Rptr. 79]; *Rausch* v. *Workmen's Comp. App. Bd.,* 274 Cal.App.2d 357, 358 [79 Cal.Rptr. 148].) ██ We conclude that, while compensability may not be extended by the "personal comfort and convenience" doctrine (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed., rev. 1973) § 9.02[2], pp. 9-11), the in-jury did arise out of and occur in the course of employment under an appro-

priate balancing of the facts and factors of "work-connectedness" (1 Larson, Workmen's Compensation Law (1972 ed.) § 29, pp. 5-295 et seq.) and the rules that the Workmen's Compensation Act is to be liberally construed (Lab. Code, § 3202); and all reasonable doubts whether an injury is compensable are to be resolved in favor of the employee (e.g., *Lamb* v. *Workmen's Comp. Appeals Bd., supra,* 11 Cal.3d 274, 280; *California Comp. & Fire Co.* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 157, 161 [65 Cal.Rptr. 155, 436 P.2d 67]; *Cal. Cas. Ind. Exch.* v. *Ind. Acc. Com.,* 21 Cal.2d 751, 760 [135 P.2d 158]; *Rausch* v. *Workmen's Comp. App. Bd., supra,* 274 Cal.App.2d 357, 367). Accordingly, we annul the board's order vacating the award.

Petitioner, 22, had worked for two months as a janitor in respondent employer's establishment in Goleta. He spoke little or no English and had only four years of schooling in Mexico. He started work at 7:30 a.m. and normally finished at 7:30 or 8 p.m., although he had "no certain time to finish." On May 25, 1973, at about 7:02 p.m. he cut his left hand in a table saw after having "punched out" at 7 p.m.. His assigned duties did not include use of the saw and he had never used it before. As to his purpose for using the saw and his permission to use it petitioner further testified that he injured his hand while cutting a piece of wood to make a "small bench," "so I could sit up and eat" "because there were no tables or anything available, and I had my little stove there that I would warm my lunch"; he and other employees ate sometimes while sitting on boxes, sometimes on the floor. Four or five days before the accident he and a co-employee (David Garcia, Jr.) approached the "house superintendent" (Daniel Herrera), and petitioner asked, " 'Daniel, would you give us permission to use the machine (saw). David wants to cut a fence . . .' I asked permission for both of us"; Herrera responded with the admonition "before using it to be sure and punch the [time] card." When he "punched out" he had finished all of his assigned work and was free to go home but he "wanted to use the machine." After "punching out" he asked the shipping clerk (Elias Herrera), the superintendent having left, for permission to "use that power saw"; Herrera "was silent for a while, then he said all right." He understood that only certain employees (not including him) were "authorized" to use the saw, but denied ever being told not to use the saw or seeing any warning sign near it; every time he used something he would ask permission.

Daniel Herrera (superintendent) testified he hired petitioner and supervised his activities; petitioner's duties consisted of general maintenance—he "generally cleans up after we stop operating about two hours"—and is "due to punch out between six and seven." There were benches (for eating)

he considered to be adequate; the employees had never complained of any inadequacy; no food facilities were provided and the employees were not required to have lunch on the premises; the "little stove" was a hot plate to which he had no objection, and would have had no objection to petitioner's having had an individual bench, depending on its size. The company policy—not to use equipment "without authorization"—he had communicated to all personnel including petitioner; only two persons, the head mechanic and assistant mechanic, were authorized to use the saw; there was a sign around the saw, in English, "Do not operate this equipment without authorization"; after the accident the signs were changed to read in English and Spanish. He denied that four or five days before the accident petitioner asked him if he and Garcia might use the saw, but testified that he did give Garcia permission to use the saw to build a fence for his own use because Garcia's father, the assistant mechanic, would supervise the project; petitioner was merely "in the area close enough to overhear [the] conversation"; he would not have permitted petitioner to use the saw, even with supervision, partly "because we have had problems with Mr. Lizama in the past as far as being careless with equipment"; nonetheless, he did not fire petitioner for his transgression of company policy in using the saw.

Elias Herrera, the shipping or receiving clerk, testified that at the time of the accident he was the only one in authority on the premises; he saw petitioner punch out at 7 p.m., then petitioner asked him " 'Elias, can I go and use the saw?' I said, 'What saw?' I didn't know which one at first. He said, 'electric saw.' So I hesitated for a moment. I was going to say no, but then he says, 'Daniel told us that we could use it after we punched out. We could use it.' Well, I said, 'if that is the case, why ask me? If he told you you could use it, why, nothing I can do.' "

The referee resolved factual conflicts in favor of petitioner and determined the injury to be AOE COE ("arising out of employment" and occurring in the "course of employment"); concluded he had express or, at least, implied authorization to use the electric saw for his personal use; and held that the act that caused petitioner's injury was contemplated by the employment relationship, citing *Possell* v. *Industrial Acc. Com.*, 23 Cal. Comp. Cases 122, and rationale found in *North American Rockwell Corp.* v. *Workmen's Comp. App. Bd.* [*Saksa*], 9 Cal.App.3d 154 [87 Cal. Rptr. 774, 35 Cal. Comp. Cases 300, 302]. Respondents' petition for reconsideration was granted. The referee in his report analyzed the evidence, found that because the clerk gave petitioner permission, the use of the saw became a benefit derived from the employment contract and was authorized

by the employer; and concluded the injury arose out of and occurred in the course of his employment and is compensable.

The appeals board found "no reason to disturb the referee's evaluation as to applicant's credibility," but concluded that the facts established by petitioner's testimony did not justify a finding that his injury is compensable. It did not consider the claim to be governed by *Possell* and *Saksa* and observed that since petitioner was instructed not to use the saw until he "punched out," he did not sustain his injury in the course of his employment, and "the purpose of [petitioner's] work" does not make his injury a compensable one; and concluded that any benefit the employer would derive from petitioner making a bench is not of such a substantial nature as to justify holding the employer liable. Denying reconsideration, the board reiterated that the injury did not arise out of and occur in the course of employment; petitioner's use of the saw was entirely personal; the building of a "lunch table" was unknown and uncommunicated to the employer; the employment relation had ceased, the employee having "punched out" and the relationship at the time of the injury had changed from that of employer-employee to what was in effect a licensor-licensee relationship.[1]

In *North American Rockwell Corp.* v. *Workmen's Comp. App. Bd.* [*Saksa*], 9 Cal.App.3d 154 [87 Cal.Rptr. 774, 35 Cal. Comp. Cases 300], relied on by the referee, the workman, who had finished his work shift 13 minutes earlier, was injured in the company parking lot helping a fellow employee start his automobile. An award made on the basis of the "parking lot rule" (a parking lot is an extension of the employment premises, therefore, ordinarily injuries occurring there are covered) was affirmed by this court although its rationale was much broader. After stating the test generally applicable in distinguishing purely personal from employment-related activity, the court referred to those decisions (generally the "personal comfort or convenience" cases) that have extended coverage "to less than common activities." The opinion included the observations that "Human services cannot be employed without taking the whole package" and "The liability of an employer for injuries sustained by his employees on the employment premises is exceedingly broad." (P. 159.) In *Possell* v. *Industrial Acc. Com.*, 23 Cal. Comp. Cases 122 the Industrial Accident Commission

---

[1]"In the opinion of the Board to hold this case compensable would be to ignore the fact that an employee and an employer can co-exist as individuals in a status other than that of employment. Ignoring this fact would discourage, if not eliminate, any friendly interpersonal relationship between the employee and employer. Certainly to hold an employer liable for workmen's compensation benefits solely because he allows an employee to use equipment on the premises for the employee's own personal reasons after hours would make an employer hesitate to extend such a courtesy."

held the injury to be covered; this court denied a writ of review. The workman was a laboratory machinist who had been permitted, on two previous occasions, to use his employer's tools and equipment to work on his own items; he injured himself when, on a "coffee break," he undertook to test his personally owned altimeter with his employer's air hose. The employer testified that he "felt such work was the rendition of a service to him in a two-fold manner. It not only increased the employee's skill and ability but it also acted as a morale builder and improved employer-employee relations." The commission stated that under ordinary circumstances the employer should not be penalized for a concession made to the employee which is solely to the employee's advantage and which neither actually nor impliedly renders any service to the employer, but in view of the considerations testified to by the employer, it concluded the injury to be compensable under "the considerable number of cases which have held that injuries occurring during permitted activity on the employer's premises are compensable where the activity, while primarily personal to the employee, is permitted by the employer because of tangible or even intangible benefits which accrue to the employer."

The bearing on this case of either *Sáksa* or *Possell* is obviously indirect. However, there are two points of misanalysis in the board's distinguishing of those decisions. First, its notion of a policy consideration (also reflected in the dicta in *Possell*) that the extension of compensation coverage would be unwise in deterring the employer from advancing certain concessions, benefits or privileges that are of primary interest to the employee has no decisional support, in fact, the suggestion uniformly has been rejected. (See *Reinert* v. *Industrial Acc. Com.*, 46 Cal.2d 349, 355-356 [294 P.2d 713]; *Truck Ins. Exchange* v. *Ind. Acc. Com.*, 27 Cal.2d 813, 819 [167 P.2d 705]; *Rausch* v. *Workmen's Comp. App. Bd.*, supra, 274 Cal.App.2d 357, 364; *Winter* v. *Industrial Acc. Com.*, 129 Cal.App.2d 174, 176-177 [276 P.2d 689].) Second, the term "personal" has an inherent ambiguity as applied to activities or incidents on the fringe of employment. It may mean "entirely personal" and therefore "not arising out of the employment," or it can mean "individual" or even "uniquely individual" without eliminating coverage. Illustrations from the decisions are many. (*Arden-Mayfair, Inc.* v. *Workmen's Comp. App. Bd.*, 33 Cal. Comp. Cases 682 [grocery worker who choked to death on his chewing gum, covered]; *Employers etc. Ins. Co.* v. *Ind. Acc. Com.*, 41 Cal.2d 676 [263 P.2d 4] [workman injured during an idiopathic seizure, covered although the genesis of both fall and injury were "personal"].) Similarly, the calculated motivation of the employee in engaging in the activity may be "personal" without the activity being excluded if, in the circumstances, it can also reasonably be described

as "work-related" or "job-connected." (See, e.g., *State Comp. Ins. Fund* v. *Workmen's Comp. App. Bd.*, 67 Cal.2d 925 [64 Cal.Rptr. 323, 434 P.2d 619] (swimming in canal); *Reinert* v. *Industrial Acc. Com., supra,* 46 Cal. 2d 349 (horseback riding); *Cal. Cas. Ind. Exch.* v. *Ind. Acc. Com.,* 21 Cal.2d 751 [135 P.2d 158] (permitted personal errand); *Toohey* v. *Workmen's Comp. Appeals Bd.,* 32 Cal.App.3d 98 [107 Cal.Rptr. 773] (retrieving lunch from outside plant); *Nichols* v. *Workmen's Comp. App. Bd.,* 269 Cal.App.2d 598 [75 Cal.Rptr. 226] (playing softball).) In short, the question runs not so much to the personal or non-personal character of the activity as to the "expectability" of its occurring in the work setting. (2 Witkin, Summary of Cal. Law (8th ed.) pp. 958-961.) Thus if the board's characterization of the injurious activity as "entirely personal" was correct, it was so in view of the totality of the circumstances, rather than because both the impetus for it and any benefit to be derived from it were individual to petitioner.

While there are few cases involving an employer's mere permission to an employee to use company tools or equipment, or to be or remain on the premises to do so, in the board's own experience elements in addition to mere permissive use that had the effect of affording coverage seem usually to have been found. (See *Ostrenger* v. *Ind. Acc. Com.,* 16 Cal. Comp. Cases 252; *Carter* v. *Ind. Acc. Com.,* 16 Cal. Comp. Cases 94; *St. Comp. Ins. Fund* v. *Ind. Acc. Com.,* 15 Cal. Comp. Cases 229; see also *Shell Oil Co.* v. *Ind. Acc. Com.,* 30 Cal. Comp. Cases 1; *Preferred Acc. Ins. Co.* v. *Ind. Acc. Com.,* 15 Cal. Comp. Cases 171. Compare *Bell* v. *Workmen's Comp. App. Bd.,* 34 Cal. Comp. Cases 620; *Wood* v. *Socony Mobil Oil Co., Inc.,* 26 Cal. Comp. Cases 263.) We do not think that the case at bench properly can be regarded as entirely governed by either the factor of mere permissive use of equipment or the "personal comfort or convenience" doctrine. As to the first, the permission in this case seems roughly equivalent to that in *State Comp. Ins. Fund* v. *Workmen's Comp. App. Bd.,* 67 Cal.2d 925, 927 [64 Cal.Rptr. 323, 434 P.2d 619].[2] Nonetheless, it seems clearly to have been "expectable" that permitted use by petitioner of the saw would have had work connections. To raise the qualification attached to that permission that such use be after "punching out" to an "agreement" that the activity be considered "entirely personal" seems an overly "technical" view of the matter. (Cf. *Laeng* v. *Workmen's Comp. Appeals Bd.,* 6 Cal.3d 771, 777 [100 Cal.Rptr. 377, 494 P.2d 1].) If the case is governed by the personal-comfort-or-convenience decisions, it would be pertinent to determine whether the employer's dining and attendant

---

[2]In this case the foreman replied to the employee's request for permission to go swimming in a nearby canal, ". . . do not let no one see you doing it."

facilities were "normal." One may agree with the superintendent that the facilities were "adequate"; nonetheless, they obviously were subject to being improved, as this employee apparently attempted to do. Such considerations may not have "justified" his unilateral efforts, but they increased the "expectability" of them.

Textwriters have long proposed and California courts have applied a "quantum theory of work-connection" that seems peculiarly appropriate for application here. (See *Argonaut Ins. Co.* v. *Workmen's Comp. App. Bd.*, 247 Cal.App.2d 669, 683 [55 Cal.Rptr. 810]; *Scott* v. *Pacific Coast Borax Co.*, 140 Cal.App.2d 173, 178-179 [294 P.2d 1039]; Larson, *op. cit.* § 29, p. 5-295; 2 Witkin, *op. cit.* pp. 944-945; Larson, *Range of Compensable Consequences in Workmen's Compensation*, 21 Hastings L.J. 609.) The theory merges the "course of employment" and "arising out of employment" tests, but does not dispense with a minimum "quantum of work-connection." There were at least these connections between petitioner's injury and his employment: the accident occurred on the employer's premises when petitioner was using the employer's equipment while constructing a bench for his personal comfort to be used on the employer's premises; and the employer expressly or impliedly permitted petitioner to use its equipment. While none of those facts alone would entail coverage, and in another case unique in its own circumstances the aggregate of them might not do so, they do lend a heavy aura of industriality to this accident. An employer is not a statutory provider of accident, health and life insurance for all incidents on his premises, but as stated in *Scott* v. *Pacific Coast Borax Co.*, 140 Cal.App.2d 173, at page 179 [294 P.2d 1039]: "It is unmistakable from the tenor of the modern cases that the statutory formula for a compensable injury is clearly met when the employment has brought the employee to the place where the accident occurred and if at that time he is engaged in some activity or conduct reasonably attributable to the employment or properly incidental thereto." In *State Comp. Ins. Fund* v. *Ind. Acc. Com.*, 176 Cal.App.2d 10 [1 Cal. Rptr. 73], compensability for a similar injury was decreed on the basis of a single industrial fact; i.e., a previous industrial injury that impaired that workman's vision and may have contributed to the second off-the-job accident. The fact that this accident occurred outside working hours is not determinative. (See *Laing* v. *Occidental Life Ins. Co.*, 244 Cal.App.2d 811, 815 [53 Cal.Rptr. 681].) As to the "expectability" of this injurious activity, there seems to have been almost an inevitability, known to this employer's supervisory employees, about this worker and this electric saw coming together; and, of course, any notion of "fault" on the employee's part was irrelevant. (See *Wiseman* v. *Industrial Acc. Com.*, 46 Cal.2d 570 [297 P.2d 649.)

The decisions of the board are annulled and the case is remanded to the board for further proceedings consistent with the views expressed in this opinion.

Thompson, J., and Hanson, J., concurred.