[Civ. No. 14458. Fourth Dist., Div. One. Nov. 19, 1976.]

ANNE E. ECKIS, Plaintiff and Respondent, v.
SEA WORLD CORPORATION et al., Defendants and Appellants.

### COUNSEL

Jones, Tellam, Irving & Estes and Arthur W. Jones for Defendants and Appellants.

Linley, McDougal, Meloche & Murphy and Lynn R. McDougal for Plaintiff and Respondent.

### OPINION

AULT, J.—Defendants Sea World and Kent Burgess have appealed from a judgment entered on a jury verdict awarding Anne E. Eckis $75,000 in compensatory damages.[1] Plaintiff had sought both compensatory and punitive damages for personal injuries she sustained while riding "Shamu the Whale," framing her complaint on three theories: fraud, negligence, and liability for an animal with vicious or dangerous propensities. Before the case was submitted to the jury, the trial court denied Sea World's motion for a nonsuit on the fraud cause of action. Later its motions for judgment notwithstanding the verdict and for a new trial were also denied.

At the outset, it is significant to point out that the case has previously been before us for a limited purpose unrelated to the issues raised by the appeal. The day plaintiff filed her action in the superior court (Apr. 18, 1972) she also filed an application for benefits with the Workers' Compensation Appeals Board (WCAB).[2] Sea World moved for summary judgment in the superior court action, contending plaintiff was an employee and that her exclusive remedy was with the WCAB. When the superior court denied its motion for summary judgment, Sea World petitioned this court to prohibit further proceedings in the civil action. It argued that jurisdiction to determine whether plaintiff was an employee whose injuries arose out of and in the course of her employment, lay exclusively with the WCAB because service of process had first been accomplished in the matter before that tribunal. We denied the writ (*Sea*

---

[1]Kent Burgess was named as a defendant in the action and has joined in the appeal. However, at the close of the evidence, all parties stipulated the case would be submitted to the jury as though Sea World were the only defendant, and neither the verdict nor the judgment makes any reference to Burgess. In this opinion we shall treat Sea World as the only defendant.

[2]We use the present title of the Board and Act in this opinion.

*World Corp.* v. *Superior Court,* 34 Cal.App.3d 494 [110 Cal.Rptr. 232]), pointing out that (1) the two tribunals had concurrent authority to determine subject matter jurisdiction (pp. 497-499), (2) service of process at an earlier date does not necessarily establish a tribunal's priority to determine the jurisdictional issue (p. 499), and (3) by submitting the issue in its motion for summary judgment in the civil action, Sea World had waived any claim and was estopped to urge that the WCAB was the proper forum to determine the issue (p. 503).

In the writ proceeding, the record of the motion for summary judgment was not before us, the propriety of the order denying the motion was not in issue, and our decision the superior court had jurisdiction to determine whether plaintiff's injuries arose out of and occurred in the course of her employment was not a holding the court had correctly decided the issue.

The major issue raised on appeal is the contention there was no substantial evidence to support the jury's finding that plaintiff's injuries did *not* occur in the course of her employment by Sea World.[3] The facts which govern this issue are not in dispute.

When injured on April 19, 1971, plaintiff Anne E. Eckis, then 22 years old, was a full-time employee of Sea World. First hired by Sea World in 1967, she had worked variously as ticket sales girl, receptionist, in the accounting department, and in 1970 became the secretary for Kent Burgess, the director of Sea World's animal training department. From then on her job title was secretary, and that is what she considered herself to be, although from time to time she did other tasks at Burgess' request, such as taking the water temperature, doing research, and running errands. She worked five days a week, for which she was paid a salary of $450 per month. When first hired plaintiff, like all other Sea World employees, had signed an authorization for reproduction of her physical likeness. Plaintiff was also an excellent swimmer, with some scuba diving experience, and had occasionally worked as a model, sometimes for pay.

---

[3]This issue was submitted in a special interrogatory which was returned in the following form by the jury:

"We, the jury in the above-entitled action, find:

"[T]hat the Plaintiff, Ann [*sic*] E. Eckis (was) (was not) acting within the course and scope of her employment at Sea World Corporation, a Corporation, when she sustained an injury while riding the whale Shamu on April 19, 1971."

In April 1971 Gail MacLaughlin, Sea World's public relations director, and Kent Burgess asked plaintiff if she would like to ride Shamu, the killer whale, in a bikini for some publicity pictures for Sea World. Although the ride was not made a condition of her keeping her job, plaintiff eagerly agreed, thinking it would be exciting. Although warned in general terms that the ride involved dangers and aware that she might fall off, plaintiff was confident of her swimming ability and anxious to do it. She had never heard of whales pushing riders around.

Burgess had been responsible for training Shamu ever since Sea World first acquired the animal. He knew Shamu was conditioned to being ridden only by persons wearing wetsuits, and that Shamu had in the past attacked persons who attempted to ride her in an ordinary bathing suit: first a Catalina swimsuit model and then Jim Richards, one of the trainers at Sea World. In addition, Burgess had read training records which showed Shamu had been behaving erratically since early March 1971. This information he did not disclose to plaintiff.

Plaintiff was trained for the ride by Sea World trainers in the tank at Sea World during normal office working hours. First she practiced riding Kilroy, a smaller, more docile whale, while wearing a bathing suit. During her one practice session on Shamu, she wore a wetsuit, fell off, but swam to the edge of the tank without incident.

On April 19 plaintiff became apprehensive for the first time when one of Sea World's trainers said he was not going to watch her ride Shamu because it was "really dangerous." Plaintiff then went to Burgess and told him of her concern. He told her not to worry, said there was nothing to be concerned about, and that the ride was "as safe as it could be." He still did not tell her about the problems they had been having with Shamu or about the earlier incidents involving Richards and the swimsuit model. Thus reassured, plaintiff, wearing a bikini Sea World had paid for, then took three rides on Shamu. During the second ride one of the trainers noticed Shamu's tail was fluttering, a sign the animal was upset. During the third ride plaintiff fell off when Shamu refused to obey a signal. Shamu then bit her on her legs and hips and held her in the tank until she could be rescued.

Plaintiff suffered 18 to 20 wounds which required from 100 to 200 stitches and left permanent scars. She was hospitalized five days and out of work several weeks. She also suffered some psychological disturbance.

Sea World paid all her medical expenses and continued to pay her salary as usual during this period. On advice of her counsel, she filed this civil action and a workers' compensation claim.

When an employee's injuries are compensable under the Workers' Compensation Act, the right of the employee to recover the benefits provided by the Act is his exclusive remedy against the employer (Lab. Code, §§ 3600, 3601;[4] *De Cruz* v. *Reid,* 69 Cal.2d 217, 221 [70 Cal.Rptr. 550, 444 P.2d 342]; *Witt* v. *Jackson,* 57 Cal.2d 57, 69 [17 Cal.Rptr. 369, 366 P.2d 641]).

Under section 3600, with exceptions not applicable here, liability of the employer to pay compensation under the Act, "in lieu of any other liability whatsoever," attaches:

"(b) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment," and

"(c) Where the injury is proximately caused by the employment, either with or without negligence."

The provisions of the Act must be ". . . liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (§ 3202.)

It has been uniformly held that the rule requiring a liberal construction of the Act in favor of its applicability applies in civil suits as well as in compensation proceedings (*Freire* v. *Matson Navigation Co.,* 19 Cal.2d 8, 10 [118 P.2d 809]; *Scott* v. *Pacific Coast Borax Co.,* 140 Cal.App.2d 173, 178 [294 P.2d 1039]; *Dixon* v. *Ford Motor Co.,* 53 Cal.App.3d 499, 506 [125 Cal.Rptr. 872]).

"The rule [of liberal construction of the Act in favor of its applicability] is not altered because a plaintiff believes that he can establish negligence on the part of his employer and brings a civil suit for damages. If the injury falls within the scope of the act, a proceeding thereunder constitutes his exclusive remedy." (*Freire* v. *Matson Navigation Co.,* 19 Cal.2d 8, 10 [118 P.2d 809].) (See also *Dixon* v. *Ford Motor Co., supra,* 53 Cal.App.3d 499, 506; *Scott* v. *Pacific Coast Borax Co., supra,* 140 Cal.App.2d 173, 178.)

---

[4]Unless otherwise indicated, all section references are to the Labor Code.

■ Where a reasonable doubt exists as to whether an act of an employee is contemplated by the employment, or as to whether an injury occurred in the course of the employment, section 3202 requires courts to resolve the doubt against the right of the employee to sue for civil damages and in favor of the applicability of the Compensation Act. The importance of adhering to the rule requiring a liberal construction of the Act in favor of its applicability in civil litigation was emphasized by the court in *Scott, supra.*

"Though it may be more opportunistic for a particular plaintiff to seek to circumscribe the purview of compensation coverage because of his immediate interest and advantage, the courts must be vigilant to preserve the spirit of the act and to prevent a distortion of its purposes. That the question before us in this case arises out of litigation prosecuted in the superior court is all the more reason for care lest rules of doubtful validity, out of harmony with the objectives of the act, be formulated." (*Scott* v. *Pacific Coast Borax Co., supra,* 140 Cal.App.2d 173, 178.)

■ Whether an employee's injury arose out of and in the course of his employment is generally a question of fact to be determined in the light of the circumstances of the particular case (*Industrial Ind. Exch.* v. *Ind. Acc. Com.,* 26 Cal.2d 130, 136 [156 P.2d 926]; *Carter* v. *Superior Court,* 142 Cal.App.2d 350, 356 [298 P.2d 598]). Like other issues relating to causation, however, when the facts are undisputed and all point in the same direction, resolution of the question becomes a matter of law. (See *Laeng* v. *Workmen's Comp. Appeals Bd.,* 6 Cal.3d 771, 774 [100 Cal.Rptr. 377, 494 P.2d 1] [injury to applicant for position of "refuse crew worker," while participating in obstacle course tryout test held compensable under the Act as a matter of law]; *Freire* v. *Matson Navigation Co., supra,* 19 Cal.2d 8 [approved directed verdict upon ground the injury occurred in the course of the employment and remedy was under the Act]; *Scott* v. *Pacific Coast Borax Co., supra,* 140 Cal.App.2d 173 [nonsuit approved where facts showed a concurrence with conditions contained in Lab. Code, § 3600].)

■ Governed by these legal principles, we examine the evidence to determine whether it supports the finding plaintiff was not acting within the course and scope of her employment at Sea World when she sustained her injuries.

The undisputed evidence shows: at the time she was injured plaintiff was an employee of Sea World; she was injured on the employer's premises during what were her regular working hours; she was injured while engaging in an activity which her employer had requested her to perform and for which it had provided her with the training and the means to perform; in riding Shamu the Whale for publicity pictures, plaintiff was not engaged in an activity which was personal to her, but rather one which was related to, furthered, and benefited the business of her employer.

Despite this formidable array of factors which indicate her injuries did arise out of and occurred in the course and scope of her employment (*Dimmig* v. *Workmen's Comp. Appeals Bd.*, 6 Cal.3d 860, 865-869 [101 Cal.Rptr. 105, 495 P.2d 433]; *North American Rockwell Corp.* v. *Workmen's Comp. App. Bd.*, 9 Cal.App.3d 154, 158-160 [87 Cal.Rptr. 774]; *Scott* v. *Pacific Coast Borax Co., supra,* 140 Cal.App.2d 173, 178, 182; *Boynton* v. *McKales,* 139 Cal.App.2d 777, 789 [294 P.2d 733]), plaintiff maintains substantial evidence supports the special finding to the contrary. She premises her position on the claim she was hired to be a secretary, not to ride a whale. Since her injuries were unrelated to the secretarial duties she was originally hired to perform, she argues her employment "had nothing whatsoever to do with her injury" and that her case does not come within the purview of the Compensation Act. Because of the highly unusual circumstances under which she was injured, she maintains the rules and formulas traditionally used to determine whether injuries have arisen out of or occurred in the course of employment are neither applicable nor helpful.

These arguments are without merit. The right to compensation is not limited to those cases where the injury occurs while the employee is performing the classical duties for which he was originally hired (see *Scott* v. *Pacific Coast Borax Co., supra,* 140 Cal.App.2d 173, 182). Far less than a direct request by the employer operates to bring an injury-causing activity within the provisions of the Compensation Act. For example, in *Lizama* v. *Workmen's Comp. Appeals Bd.,* 40 Cal.App.3d 363 [115 Cal.Rptr. 267], the employee was injured on the employer's premises after he had clocked out from work while using a table saw to construct a bench to sit on at lunch time. Although his assigned duties did not include use of the saw and he had never used it before, the injury was held compensable because the employer had expressly or impliedly permitted such use of equipment. At page 370, the court stated:

"Textwriters have long proposed and California courts have applied a 'quantum theory of work-connection' that seems peculiarly appropriate for application here. (See *Argonaut Ins. Co.* v. *Workmen's Comp. App. Bd.,* 247 Cal.App.2d 669, 683 . . .; *Scott* v. *Pacific Coast Borax Co.,* 140 Cal.App.2d 173, 178-179 . . .; Larson, *op. cit.* § 29, p. 5-295; 2 Witkin, *op. cit.* pp. 944-945; Larson, *Range of Compensable Consequences in Workmen's Compensation,* 21 Hastings L.J. 609.) The theory merges the 'course of employment' and 'arising out of employment' tests, but does not dispense with a minimum 'quantum of work-connection.' There were at least these connections between petitioner's injury and his employment: the accident occurred on the employer's premises when petitioner was using the employer's equipment while constructing a bench for his personal comfort to be used on the employer's premises; and the employer expressly or impliedly permitted petitioner to use its equipment. . . ." (*Lizama* v. *Workmen's Comp. Appeals Bd., supra,* 40 Cal.App.3d 363, 370.)

Where, as here, an employee is injured on the employer's premises during regular working hours, when the injury occurs while the employee is engaged in an activity which the employer has requested her to undertake, and when the injury-causing activity is of service to the employer and benefits the employer's business, the conditions imposing liability for compensation under Labor Code section 3600 are met as a matter of law, and it is immaterial that the activity causing the injury was not related to the employee's normal duties or that the circumstances surrounding the injury were unusual or unique.

It would be wholly incongruous and completely at variance with the long declared purposes and policies of the workers' compensation law to say that an employee who sustained injuries under the circumstances of this case is not entitled to the benefits of the Workers' Compensation Act. Since her injuries fall within the scope of the Act, a proceeding under it constitutes plaintiff's exclusive remedy (Lab. Code, §§ 3600, 3601; *Freirie* v. *Matson Navigation Co., supra,* 19 Cal.2d 8, 10).

The concluding remarks of the court in *Scott* v. *Pacific Coast Borax Co., supra,* 140 Cal.App.2d 173, 184, are appropriate here. "We are cognizant of the fact that plaintiff, believing himself without fault, regards it to his decided advantage to maintain an action for damages against his employer rather than to receive an award of workmen's

compensation. But in deciding whether an injury is compensable, we must disregard completely the question of fault and be mindful that the rules we lay down in this particular case must be salutary and consonant with the spirit and purpose of the compensation act, since they will govern other cases where the act will provide the worker disabled by industrial injury with his sole remedy. Inasmuch as this state is committed to the view, that the Workmen's Compensation Act must be liberally construed in favor of coverage for the employee and jurisdiction in the commission and since the facts adduced show there existed a concurrence of the conditions of section 3600 of the Labor Code, the trial court correctly ruled that the commission was the exclusive tribunal for the prosecution of plaintiff's rights." (*Scott* v. *Pacific Coast Borax Co., supra,* 140 Cal.App.2d 173, 184.)

The special finding of the jury is not supported by the evidence. Since the undisputed evidence established that plaintiff's injuries were compensable under the Worker's Compensation Act, the trial court should have granted Sea World's motion for judgment notwithstanding the verdict.

This holding is determinative of the appeal and makes it unnecessary to discuss Sea World's additional contentions.

The judgment is reversed; the trial court is directed to enter a judgment in favor of Sea World.

Brown (Gerald), P. J., and Cologne, J., concurred.

A petition for a rehearing was denied December 6, 1976, and respondent's petition for a hearing by the Supreme Court was denied January 13, 1977.