[No. AO19625. First Dist., Div. Two. Aug. 19, 1983.]

MARILYN EZZY, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
GASSETT, PERRY & FRANK et al., Respondents.

COUNSEL

Eugene Michael Hyman and Dailey & Hyman for Petitioner.

Clark Barber and Hoge, Fenton, Jones & Appel for Respondents.

OPINION

SMITH, J.—Petitioner, Marilyn Ezzy, sought and was granted a writ of review after the Workers' Compensation Appeals Board (hereafter WCAB)

denied Ezzy's petition for reconsideration and affirmed the decision of the workers' compensation judge who found that petitioner's injury did not arise out of and in the course of her employment.

The sole issue before us is whether the injury to petitioner's finger, which occurred during a company-sponsored softball game, arises out of and in the course of her employment, and is therefore compensable.

Marilyn Ezzy (hereafter Ezzy) at all relevant times was employed by the law firm of Gassett, Perry & Frank (hereafter GPF) as a law clerk. On or about August 15, 1980, Ezzy participated in an employer-sponsored softball game, during which she injured the little finger on her right hand as she attempted to catch a fly ball.

The record of the WCAB hearing discloses that GPF participated in a softball league composed primarily of civil defense law firms. The rules of the league required that the teams be composed of both men and women, and required forfeiture if less than four women were present on each team.

John Burton, (hereafter Burton) is a partner in GPF, and was the team coach. Burton stated that he did not have to recruit players; a sign up was conducted of all those who wanted to play. Burton testified that it was not a requirement that everyone will play. Some of the older and less athletically inclined members of the firm did not play. Some, but not all, of the secretaries participated. Everyone in the GPF firm, player and nonplayer alike, was provided at the firm's expense a special teeshirt emblazoned with his or her GPF billing number. Burton testified that GPF paid for the balls, bats and postgame refreshments. A postseason awards banquet was provided by GPF to which all employees were invited. Burton stated that no one was ever reprimanded or fired for not playing.

Burton further testified that his secretary sent around memos reminding office personnel of games or practice. Burton stated that Administrative Director's Rule 9883, regarding off-duty recreational activities, was neither posted nor read to employees. Burton testified that "the better players were more encouraged to be present than some of the ones that were not so good. That would also depend on how many men we had and how many women we had." Burton stated that his team had never forfeited a game, and that he always had the correct number of female players there. He further testified that he did have one or two problems making sure one of their key women would be present at the games. Burton admitted that, although no business was derived from the games, they were very good for office spirit.

Ezzy testified that she did not volunteeer but was "drafted" to join the team. On the first day after she returned from vacation, Burton approached

Ezzy, handed her a teeshirt, a schedule of games and practices, and said, "At the next one we'll see you there." Ezzy understood there was a coed requirement, and when there appeared to be shortage of women, the female members were urged to get out and play. Ezzy felt there was a spirit of camaraderie that the firm was trying to create, and that the strong urgings to play and the concern over having an adequate number of females led her to believe that she should play softball. Ezzy stated that the firm paid for postgame pizza and other refreshments. Ezzy testified that on one occasion home movies of a softball game were shown in the conference room of GPF offices during working hours, and that she and others were called in to watch. At the awards banquet, Burton received a whip as a gag-gift because he was such a "hard driver."

In his "Opinion On Decision," the workers' compensation judge stated that participation in the softball game, while encouraged, was not a requirement or a reasonable expectancy of petitioner's job. Petitioner contends that the workers' compensation judge erred in concluding that petitioner's injury did not occur in the course of employment. We agree.

DISCUSSION

I

At the outset, we note that the application of Labor Code section 3600, subdivision (a)(8) (hereafter referred to as section 3600, subdivision (a)(8)) to the instant factual setting presents a close case. We find nothing in the case law to guide us; no appellate court has yet construed section 3600, subdivision (a)(8).

Before examining the evidence as reflected by the record, we must consider the applicable statute, section 3600, subdivision (a)(8),[1] which reads, in pertinent part, as follows:

"(a) Liability for the compensation provided by this division . . . shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur:

---

[1]Labor Code section 3600, subdivision (a)(8) (added by Stats. 1978, ch. 1303, § 5, p. 4262) was formerly denominated section 3600, subdivision (h).

".   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(8) Where the injury does not arise out of voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the employee's work-related duties, *except where these activities are a reasonable expectancy of, or are expressly or impliedly required by, the employment.* The administrative director shall promulgate reasonable rules and regulations requiring employers to post and keep posted in a conspicuous place or places a notice advising employees of the provisions of this subdivision. Failure of the employer to post such a notice shall not constitute an expression of intent to waive the provisions of this subdivision." (Italics added.)

The clear language of section 3600, subdivision (a)(8) first states the rule—recovery may be had for injuries arising out of and in the course of employment if those injuries do *not* arise out of voluntary participation in athletic activities. Stated conversely, no recovery may be had where the injury arises from voluntary participation in athletic activities. The section then states exceptions to the rule of noncompensability. Where athletic activities are either a "reasonable expectancy of, or are expressly or impliedly required by, the employment" injuries arising therefrom *are compensable.*

The key legal question to be decided here is whether Ezzy's participation was a reasonable expectancy of her employment at GPF.

■ Respondent erroneously assumes that the question of "reasonable expectancy" is one of fact. While factual findings form the foundation upon which a court bases its determination that a "reasonable expectancy" exists, the question requires a conclusion derived from those facts which is itself *legal* in nature. Furthermore, the question of "reasonable expectancy" is but a subset of the ultimate issue—whether the applicant's injury arose out of and in the course of her employment.

With respect to the ultimate issue, the scope of our review is clear: " 'Where . . . there is no real dispute as to the facts, the question of whether an injury was suffered in the course of employment is one of law and a purported finding of fact on that question is not binding on an appellate court.' " (*Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 864 [101 Cal.Rptr. 105, 495 P.2d 433]; see also *Reinert* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 349, 358 [294 P.2d 713]; *Hulbert* v. *Workmen's Comp. Appeals Bd.* (1975) 47 Cal.App.3d 634, 639 [121 Cal.Rptr. 239].)

Other areas of the law have attempted to give a specific meaning to this phrase. ■ In connection with insurance law, the "doctrine of reasonable expectations" has been applied so that ambiguities in an insurance policy are to be resolved in accordance with *the reasonable expectations of the insured.* (*Auto-Owners Ins. Co.* v. *Jensen* (8th Cir. 1981) 667 F.2d 714,

721.) ■ With respect to Fourth Amendment law, a person's "reasonable expectation of privacy" is one which is *subjectively* held by the person searched, and which society recognizes as *objectively* reasonable. (*People v. Bradley* (1969) 1 Cal.3d 80, 85 [81 Cal.Rptr. 457, 460 P.2d 129].) ■ In the context of labor law, for purposes of establishing whether a person is an employee when determining whether a majority of employees have agreed to union representation, the determination is based upon *the employee's reasonable expectation* of future or continued employment. (*Montgomery Ward & Co., Inc.* v. *N. L. R. B.* (7th Cir. 1981) 668 F.2d 291, 298.)

In each of the situations mentioned above, the law looks to the expectations of the person who is being protected and measures his subjective understanding against a neutral and unbiased standard. ■ It is our view that the test of "reasonable expectancy of employment" in the context of the case at bar consists of two elements: (1) whether the employee subjectively believes his or her participation in an activity is expected by the employer, and (2) whether that belief is objectively reasonable.

The effect of this test is to recognize *only* expectations which are objectively reasonable. Stated another way, the employer is protected from liability for injuries where an employee's belief that he or she is expected to participate in an activity is unreasonable. The burden rests upon an employer to insure that no subtle or indirect pressure or coercion is applied to induce involuntary participation by an employee. We do not find this burden to be an onerous one, for the employer's means of protecting himself are peculiarly within his own control.[2]

We turn next to legislative intent. Prior to the enactment of section 3600, subdivision (a)(8), section 3600 made no specific reference to athletic or recreational activities.[3]

---

[2]For example, we note that the Legislature has specifically placed the burden upon the employer to post a notice which advises employees of the contents of subdivision (a) of Labor Code section 3600 regarding the possible noncompensability of injuries resulting from voluntary participation in athletic activities.

[3]Section 3600 of the Labor Code prior to amendment read as follows:

"Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as provided in Section 3706, shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur:

"(a) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division.

"(b) Where, at the time of the injury, the employee is performing service growing out of

Section 3600, subdivision (h), now section 3600, subdivision (a)(8), originated as Assembly Bill No. 2555 (1977-1978). The bill analysis prepared by the Assembly Committee on Finance, Insurance, and Commerce when that committee heard Assembly Bill No. 2555 stated "[t]he thrust of [the proposed legislation] appears to overrule . . . *Goodman* v. *Fireman's Fund American Insurance Company* (1974) 74 OAK 49472, [which] found that a water skiing injury to an airline stewardess during a four-day layover in Tahiti was an employment-related injury" and therefore compensable. According to the bill analysis, the legislation was also intended to overrule *Lizama* v. *Workmen's Comp. Appeals Bd.* (1974) 40 Cal.App.3d 363 [115 Cal.Rptr. 267], which held compensable an injury to a janitor, who, after receiving permission from his employer, used a company power saw after work hours. The committee report emphasized that the activities were held compensable because they were reasonably foreseeable or expectable in the work setting.

■ Section 3600, subdivision (a)(8) was therefore intended to draw a brighter line delimiting compensability by replacing the general foreseeability test with one of "reasonable expectancy" of employment.

■ ■■■ At the time Assembly Bill No. 2555 was under consideration, two cases adjudicated by the WCAB in 1976 and 1977 were presumptively[4] known to the Legislature, yet there is no hint in the committee analysis that the Legislature was displeased with those results.

In *Pacific Tel. & Tel. Co.* v. *Workers' Comp. Appeals Bd. (Brady)* (1976) 41 Cal.Comp.Cases 771, Ms. Brady, an employee of the phone company, was injured while playing softball on a team made up wholly of Pacific Telephone Company employees. The team played other phone company teams comprising the league. The games were played off the employer's premises after working hours. Ms. Brady was not a regular team member, but participated on this occasion because the team would otherwise have

and incidental to his employment and is acting within the course of his employment.

"(c) Where the injury is proximately caused by the employment either with or without negligence.

"(d) Where the injury is not caused by the intoxication of the injured employee.

"(e) Where the injury is not intentionally self-inflicted.

"(f) Where the employee has not willfully and deliberately caused his own death.

"(g) Where the injury does not arise out of an altercation in which the injured employee is the initial physical aggressor."

[4]It is well established that the Legislature, in enacting legislation, is assumed to be familiar with existing judicial decisions (*Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977-978, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394]; see also generally 58 Cal.Jur.3d, Statutes, § 92, pp. 446-449.) Decisions of the Worker's Compensation Appeals Board are "judicial" in nature. (Lab. Code, § 111; see generally 2 Witkin, Summary of Cal. Law (8th ed. 1973) Workmen's Compensation, § 14, pp. 860-861.)

had to forfeit for lack of sufficient players. Ms. Brady felt job pressure to play when asked to do so by team members who included Ms. Brady's supervisor. The management of the telephone company permitted league formation meetings to be conducted on the premises, and promulgated safety rules. The company photocopy machine was used in the dissemination of league and team information. Also, raffles to benefit the league were conducted on company premises during working hours. The WCAB judge relied upon (1) substantial employment involvement in creation and operation of the league, (2) benefit to the employer of improved employee morale, and (3) the job-related pressure upon Ms. Brady which led to her participation. The Court of Appeal denied a petition for writ of review.

In *California Highway Patrol* v. *Workers' Comp. Appeals Bd.* (*Loveless*) (1977) 42 Cal.Comp.Cases 264, the WCAB found that a highway patrol officer's injury was compensable. Officer Loveless played on a softball team representing the Monterey area office of the CHP which participated in the Central Coast Counties Police League. Notices of games were posted in the locker room, play was encouraged by state and local CHP management. The WCAB judge concluded the softball activity was part and parcel of Loveless' job. The Court of Appeal denied CHP's petition for a writ of review.

Both the *Pacific Tel. & Tel.* and *California Highway Patrol* cases, in finding athletic injuries compensable, go beyond the broad "foreseeability" test of *Goodman* and *Lizama*. Rather these cases rely upon the more specific factors of employer involvement, benefit to employer, and job-related pressure to participate to find an activity within the course of employment.

■ Prior to the enactment of section 3600, subdivision (a)(8), the general rule was that athletic injuries were "not compensable unless either (1) the employee is required by the employer to take part in such activities, (2) the employer sponsors the activity primarily to obtain advertising benefit from the use of his or her name in connection with the team, or (3) the employer encourages participation in such activities. Relevant factors indicating the purpose of an athletic activity such as a baseball team are: (1) whether the employer purchases the athletic uniforms or equipment; (2) whether such uniforms bear the employer's name or insignia; (3) whether wages are paid during practice or play; and (4) whether participation is voluntary." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1982), § 9.03[2], p. 9-32.2. [Fn. citing case authority omitted.])

These factors outlined in the Hanna volume, while they predate the passage of section 3600, subdivision (a)(8), are still relevant to the extent that they help bring the focus to the *objective reasonableness* of applicant's sub-

jective belief that participation in an activity is an expectancy of employment.

■ We conclude that it was the Legislature's intent to eliminate from the workers' compensation scheme *only* those injuries which were remotely work-connected. The use of such terms as "reasonable expectancy" and "impliedly required" in section 3600, subdivision (a)(8) is evidence that the Legislature recognized the potential use by employers of indirect means to encourage participation in an activity, and that such indirect encouragement changes the voluntary character of such participation. The Legislature intended that injuries occurring under such circumstances should be considered work-connected, and must fall within the coverage of the workers' compensation scheme.

## II

■ In the case at bar we conclude that facts evident from the record establish that petitioner's injury resulted from participation in an activity which was a "reasonable expectancy" of her employment, and therefore occurred in the course of her employment.

Petitioner was a part-time law clerk in her second year of law school, a position which is low in the legal profession's hierarchy. As such, petitioner was more than usually vulnerable to pressure or suggestion that she join the law firm's softball team. Thus, when she was urged to play by one of the firm's partners, who was also the team coach, it was reasonable for petitioner to feel that she was expected to participate.

There was relatively more pressure on female employees to participate because of the league's requirement that four women be present on the field at all times.

A substantial benefit to the firm was generated by participation in the softball team by virtue of improved office cooperation, spirit, morale and camaraderie.

The law firm paid for all equipment, for teeshirts for team members and other employees of the firm, as well as for post-game refreshments. The firm sponsored an awards banquet to which team members and other employees were invited.

It is also undisputed that the law-firm employer had neither posted nor read to its employees the contents of Administrative Director's Rule 9883, which reads as follows:

*"Notice to Employee Concerning Off-Duty Recreational Social, or Athletic Activity.* Every employer shall post and keep posted in a conspicuous place or places, the following notice:

" 'Your employer or its insurance carrier may not be liable for the payment of workers' compensation benefits for any injury which arises out of an employee's voluntary participation in any off-duty recreational, social, or athletic activity which is not a part of the employee's work-related duties.' "

Section 3600, subdivision (a)(8) states that "[f]ailure of the employer to post such a notice shall not constitute an expression of intent to waive the provisions of this subdivision." Nonetheless, in the case at bar, employer's failure to post the required notice was contrary to a statutory directive which was intended to inform an employee of the jeopardy of noncoverage by workers' compensation insurance when voluntarily involved in athletic events. While not a waiver of the subdivision's provisions, an employer's failure to post the required notice makes any action by the employer which tends to encourage participation in athletic events appear more coercive in effect.

The facts present a close case. We are, however, mindful of Labor Code section 3202 which mandates: "The provisions of Division 4 and Division 5 of this code shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment."

In the case at bar, the record shows that petitioner subjectively believed that her employer expected her to participate in the company sponsored baseball activities. Petitioner so stated under oath. We have determined that her subjective belief was objectively reasonable, and, therefore, conclude that petitioner's injury arose out of and in the course of her employment.

The decision of the Workers' Compensation Appeals Board is annulled and the cause is remanded to that board for proceedings consistent with the views expressed herein.

Miller, J., concurred.

**ROUSE, Acting P. J.**—I concur, but not without comment.

Admittedly, the question of whether this particular activity was a reasonable expectancy of petitioner's employment is a legal issue which this court may properly redetermine, based upon facts set forth in the record. Nevertheless, I am reluctant to "second guess" the workers' compensation judge

(a specialist in that field) whose adjudication has been reviewed and indorsed by the Workers' Compensation Board, in what, in my perception, is a close case. Since substantial evidence supports that judge's conclusion I would hold that his determination of the matter must prevail were it not for those cases cited wherein awards of compensation were made in situations which are, in my judgment, factually indistinguishable from petitioner's case.

One of the functions of an appellate court in announcing its decision is to ensure uniformity and consistency in the rules applied by various inferior tribunals. I believe that is what the decision in this case seeks to accomplish, and it is for this limited reason that I concur in the opinion.