[No. F007253. Fifth Dist. Dec. 8, 1986.]

AETNA CASUALTY AND SURETY COMPANY, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
AMADO CORONADO, Respondents.

924

COUNSEL

Files, McMurchie, Foley, Brandenburger & Weill and Daniel L. Keeling for Petitioner.

Stephen Schneider and Javier Alabart for Respondents.

## Opinion

**HAMLIN, J.**—Petitioner Aetna Casualty and Surety Company (Aetna) seeks review of a decision of the Workers' Compensation Appeals Board (board) after denial of reconsideration in which the board adopted the decision of the workers' compensation judge (WCJ) that the injury sustained by Amado Coronado (applicant) arose out of and occurred in the course of applicant's employment by Haros & Haros, a partnership (employer). Aetna contends the injury to applicant which rendered him a paraplegic did not arise in the course of employment and hence applicant's claim is barred by the going-and-coming rule as well as by the provisions of Labor Code section 3600, subdivision (a)(8).[1] We agree and annul the board's decision.

### Facts

On June 5, 1984, applicant filed a workers' compensation claim against employer alleging he suffered an industrial injury on June 6, 1983, as a result of an accident which occurred while traveling in an automobile belonging to and driven by Luis Avilez, a friend and coworker, from his place of employment in Fresno to his residence in Woodlake.

Applicant's employer specializes in buying and remodeling old homes for rental. It employed about ten people at the time of applicant's accident, and it owned two or three pickup trucks. Additionally, employer leased Avilez's pickup on a need basis. Customarily, employer's workers arrived at the company warehouse in Fresno around 7:30 a.m. on weekdays. From there the employees drove to various worksites throughout the city. Between 5:30 and 6 p.m. the employees returned to the warehouse, unloaded and parked the trucks. The parking lot adjacent to the leased warehouse was shared with other tenants.

Employer paid its employees based on an eight-hour day, beginning when the employees left the warehouse for the assigned jobsite and usually ending when they terminated work at the particular jobsite. Occasionally the pay period encompassed the added travel time from the jobsite back to the warehouse if that time was needed to complete the eight-hour day.

On the day of the accident, applicant commuted to work with Avilez, as was his usual practice. He traveled to the jobsite and, along with the other employees, returned to the warehouse after the day's work between 5:30 and 6 p.m. Upon applicant's return, several employees and an employing

---

[1]Further statutory references are to the Labor Code.

partner, Ralph Haros, Sr., were drinking beer on the company parking lot. This activity had not been planned. Applicant and Avilez voluntarily joined the group and drank beer. Such drinking sessions on the parking lot used by employer and other tenants had occurred on several previous occasions. The sessions occurred two or three times during the period of applicant's employment. At least one of the employing partners participated in these parties and both "'tacitly permitted and consented'" to the drinking. However, company funds were not used to purchase the alcoholic beverages that were consumed on the night of the accident or at previous sessions. On each occasion the participants contributed the funds to purchase beer. Each of the witnesses testified the employees did not store beer in the company refrigerator and did not drink while on duty.

The drinking by company workers continued for several hours before the workers began leaving shortly after dark. After the group left the parking lot, applicant entered Avilez's pickup and they headed for Woodlake with Avilez driving. It was close to a 20-minute drive down Highway 99 to the Woodlake turnoff, and an additional 25- to 35-minute trip into Woodlake, requiring 45 minutes to an hour for the entire commute.

On the night of the accident, Avilez and applicant stopped at the minimart and gas station at Chestnut Avenue and Highway 99 where Avilez bought some juice. From this point on applicant remembered nothing. Avilez recalled the stop at the gas station but remembered nothing other than reaching the Kings River Inn near the Woodlake turnoff. Thus the interval between the time applicant and Avilez left the warehouse and the time of the accident is largely unexplained in the record. The accident occurred sometime between 11:30 p.m. and 2 a.m. How the accident occurred is revealed by evidence in the record only to the extent of a hearsay statement given credit by the board. That statement indicated Avilez, at the time of the collision, was proceeding in the wrong direction on Highway 99, apparently attempting to backtrack to the Woodlake turnoff.

## DISCUSSION

### I. *Going-and-coming Rule.*

The going-and-coming rule is a concept integrally tied into section 3600, subdivision (a), the cornerstone of injury compensation under the workers' compensation act. That section provides in relevant part: "(a) Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person, . . . shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising

out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur:

"(1) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division.

"(2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment.

"(3) Where the injury is proximately caused by the employment, either with or without negligence.

" . . . . . . . . . . . . . . . . . . . . . . . .

"(8) Where the injury does not arise out of voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the employee's work-related duties, except where these activities are a reasonable expectancy of, or are expressly or impliedly required by, the employment. . . ."

The going-and-coming rule was developed as an interpretive guide to aid the courts in determining whether an injury arose in the "course of employment." ▮ As our Supreme Court noted in *Parks* v. *Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 585, 588-589 [190 Cal.Rptr. 158, 660 P.2d 382]: "One of the rules the courts have fashioned to aid in determining whether an injury occurred in the 'course of employment' is the 'going and coming' rule. [Citations.] Broadly stated, the rule prohibits compensation for injuries received by an employee while traveling to and from work. [Citations.] Courts have reasoned that the employment relationship is suspended during this period and, therefore, injuries occurring when an employee is engaged in off-duty travel, off of the employer's premises, are not within the 'course of employment' for purposes of the Workers' Compensation Act. [Citations.]"

The rule adequately protects the interests of the employer, who desires "to be immune from liability for the employee's injury or death that occurs in the everyday transit from home to office or plant." (*Hinojosa* v. *Workers' Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 156 [104 Cal.Rptr. 456, 501 P.2d 1176].) The employee, however, no doubt desires protection and compen-

sation "from loss by injury or death that occurs in the non-routine transit, or results from the means of transit or the use of a car undertaken for the employer for his benefit at his direct or implied request." (*Id.* at p. 157.) Consequently, to protect the interests of the employed, judicially developed exceptions to the going-and-coming rule have materialized to cover every conceivable transit or commute that is glossed with a business purpose. (See 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1986 rev.) § 9.04[4], pp. 9-57–9-82.)

Consequently, the rule and its exceptions force the courts into a factual analysis to decide whether an injury did arise during the course of employment, and whether the injury is compensable under section 3600, subdivision (a).

■ Aetna contends the going-and-coming rule is a bar to compensation in this case, and that none of the exceptions to the rule are applicable. Factually, Aetna's argument is quite strong. Luis Avilez testified that the commute from Fresno to Woodlake took approximately 45 minutes to an hour, and that he and the applicant were traveling home from work when the accident occurred. These facts clearly implicate the operation of the rule. Moreover, the accident occurred between 11:30 p.m. and 2 a.m., some three to five hours after Avilez and applicant left employer's parking lot. This prolonged and delayed commute time only serves to enforce the conclusion that applicant's commute was beyond the dominion of the employer. Absent some applicable limitation, the going-and-coming rule bars recovery.

■ Before considering the applicability of any limitation on the going-and-coming rule, we note that the WCJ expressly found that applicant's claim is not barred by the going-and-coming rule. However, that finding constitutes a conclusion of law based on his and the board's application of law to the substantially undisputed facts of this case. Accordingly, it does not limit our review of this issue. (See *Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 864 [101 Cal.Rptr. 105, 495 P.2d 433].)

The only limitation on the going-and-coming rule which may reasonably be considered applicable here was stated by our Supreme Court in *McCarty* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 677, at pages 681-683 [117 Cal.Rptr. 65, 527 P.2d 617]: "We first observe that although McCarty was killed driving home from his place of employment, the going and coming rule does not preclude compensation. McCarty became intoxicated at his

place of employment, and this intoxication proximately caused his death. . . . [I]f the proximate cause is of industrial origin, the time and place of injury or death even if foreign to the premises does not serve to nullify recovery.

"We arrive, therefore, at the issue of whether McCarty's intoxication arose in the course of his employment. Employee social and recreational activity on the company premises, endorsed with the express or implied permission of the employer, falls within the course of employment if the 'activity was conceivably of some benefit to the employer. . . .' [Citations.]

"In the present case the owner-managers of Apartment Plumbers [employer], by permitting recurrent drinking parties on the premises, and by routinely using company accounts and funds to purchase the intoxicants, demonstrated that they considered these gatherings to be company activities. . . .

"Proof of benefit to the employer, moreover, is not essential to place an activity within the scope of employment if that activity has become a customary incident of the employment relationship. . . .

"The record in the present case demonstrates that drinking parties had become a recognized, established, and encouraged custom at Apartment Plumbers. We conclude that McCarty's attendance at such parties comes within the scope of his employment." (Fns. omitted.)

■ In the instant case, the going-and-coming rule bars applicant's claim unless the evidence demonstrates his intoxication arose in the course of his employment under the criteria employed in *McCarty*.

There is testimony in this record that it was customary for the employees upon returning to the warehouse to report what they had done that day and what they expected to do the next. The record does not reveal that the talking during the drinking involved anything more than some elaboration on that. Moreover, there is no evidence that any employee was ever compensated for the time spent at the warehouse after the trucks were unloaded and parked. Employer funds were not used to purchase intoxicants, and the employing partners did nothing to demonstrate they considered the occasional unplanned after-work sessions to be company activities. Finally, the evidence here suggests these after-hour drinking and talking sessions oc-

curred spontaneously and infrequently; they were not an established or encouraged custom as in *McCarty*.

The record in this case simply does not support a finding that the participation of applicant and Avilez in the after-hour drinking and talking session on employer's parking lot was within the course of their employment. Therefore, the *McCarty* limitation on the going-and-coming rule is inapplicable. Without that limitation, the going-and-coming rule bars applicant's claim unless applicant's voluntary participation in the after-work social activity falls within the exception to section 3600, subdivision (a)(8). We turn now to a discussion of that statutory provision.

## II. *Section 3600, Subdivision (a)(8).*

■ Section 3600, subdivision (a)(8) was the first part of section 3600 to address "off duty" recreational, social or athletic activities. It provides that injuries caused by these activities are compensable only if the activities are a reasonable expectancy of the employment or are expressly or impliedly required by the employment.

The threshold question required by this subdivision has already been addressed; the social gathering after work on the evening of June 7, 1983, was indeed "off duty." However, we must also consider the remaining language in subdivision (a)(8) providing for compensation if the activities are "a reasonable expectancy of, or are expressly or impliedly required by, the employment." This statutory language is drafted with the use of the disjunctive "or"; the exact relationship between these two clauses is not clear.

■ In *Ezzy* v. *Workers' Comp. Appeals Bd.* (1983) 146 Cal.App.3d 252 [194 Cal.Rptr. 90] the court interpreted the "reasonable expectancy" language. It noted that this test was a mere "subset of the ultimate issue— whether the applicant's injury arose out of and in the course of her employment." (*Id.* at p. 259.) Once a reasonable expectancy is found favoring the activity, the employee, though "off duty," is still in the course of employment and able to claim compensation. *Ezzy* decided that the "reasonable expectancy" language required a dual inquiry: "It is our view that the test of 'reasonable expectancy of employment' in the context of the case at bar consists of two elements: (1) whether the employee subjectively believes his or her participation in an activity is expected by the employer, and (2) whether that belief is objectively reasonable." (*Id.* at p. 260.)

*Ezzy,* however, did not clearly interpret the "expressly or impliedly required" language of subdivision (a)(8). That court did decide, however, that by using such terms as "reasonable expectancy" and "impliedly required," the Legislature meant to curtail indirect pressure by employers urging participation in "off duty" activities. Such pressure, via this code section, would change the voluntary character of the participation, and allow a finding of course of employment if an injury occurred.

The next case interpreting the language of section 3600, subdivision (a)(8), is *Meyer* v. *Workers' Comp. Appeals Bd.* (1984) 157 Cal.App.3d 1036 [204 Cal.Rptr. 74]. The *Meyer* court built upon *Ezzy's* belief that the Legislature enacted section 3600, subdivision (a)(8), to prevent the indirect pressure by employers upon employees to participate in off-duty social and athletic activities. In so doing, *Meyer* interpreted the language in subdivision (a)(8) as being part of the same inquiry. As the court noted when commenting upon the board decision, the board "did not discuss whether participation was expressly or impliedly required by the employment. It should have considered the factors enunciated in *Ezzy* to determine the objective reasonableness of Meyer's expectancy." (*Id.* at pp. 1042-1043.) Hence, *Meyer* interpreted the "express or implied" language of section 3600, subdivision (a)(8), in conjunction with the second prong developed in the *Ezzy* test—the objective reasonableness of the employee's belief; evidence demonstrating and proving express or implied pressure upon the employee serves to establish the objective reasonableness of that employee's belief that he or she was required to participate in the off-duty activity.

This interpretation of the code section, although perhaps inconsistent with its disjunctive form, is certainly consistent with the intent of the Legislature. The *Meyer* reading of the code section definitely effectuates the lawmakers' desire to remove indirect employer pressure upon employees regarding off-duty recreational activities by making injuries during such activities compensable in the event indirect coercion is found.

Here, the WCJ did not make an express finding on the section 3600, subdivision (a)(8) issue. However, in the posttrial briefs of the parties, the *Ezzy/Meyer* question was extensively discussed by both sides. Moreover, because the evidence adduced at the hearing was comprehensive, a remand would merely cause delay without yielding any fresh testimony. Hence, this court is in a position to decide the section 3600, subdivision (a)(8) issue without express findings.

*Ezzy* initially requires an inquiry into the subjective belief "of the person who is being protected." (*Ezzy* v. *Workers' Comp. Appeals Bd.*, *supra*, 146 Cal.App.3d at p. 260.) Does that individual subjectively feel that the activity is required by the employment relationship? This subjective hurdle is not great; according to *Ezzy* and *Meyer,* the employee satisfies the test merely by testifying he or she felt that participation in the activity was mandated by the employment relationship. ■ Here, the evidence does not even meet this lax standard. The applicant himself testified that employer never required the employees to remain after hours to consume alcohol and talk. He said his participation in the activity was voluntary. This evidence does not establish a subjectively felt pressure.

Additionally, the applicant noted that this type of after-work gathering was unusual, that employee alcohol was prohibited in the company refrigerator, and that the company did not provide beer for the occasions. All of this evidence militates against any finding of a subjectively held belief by the applicant that his presence was required.

Even if evidence could be produced of a subjectively held belief, *Ezzy* requires that this expectancy be confirmed by objective indicia of employer pressure. Here, too, the evidence is inadequate. All of the employees agreed this type of after-work gathering was a rare occurrence. Moreover, they all testified there was no internal pressure from the employer upon the employees to stay after work to talk and consume alcohol. There was also general agreement below that the employees were prohibited from storing their beer in the company refrigerator, and that the company never provided funds for the purchase of the beer when the employees decided to remain after work to consume beer. All of this evidence indicates there was no employer pressure upon the employees to stay after work to talk and consume beer; indeed, a reasonable person interpreting these facts would find no indicia of indirect employer pressure as required by the second prong of the *Ezzy* test.

In light of the above, the prongs of the *Ezzy* test have not been satisfied. Absent the required "reasonable expectancy" of section 3600, subdivision (a)(8), the activity must be classified as an "off duty recreational, social, or athletic activity." As such, the activity does not fall within the area and course of employment, and therefore applicant's injury must be held noncompensable.

This conclusion makes it unnecessary to consider Aetna's other arguments.

The decision of the board is annulled and the cause is remanded to the board for proceedings consistent with the views expressed herein.

Hanson (P. D.), Acting P. J., and Ballantyne, J., concurred.

The petition of respondent Coronado for review by the Supreme Court was denied March 4, 1987.