[No. C000474. Third Dist. Mar. 25, 1987.]

MIKE CHILDERS, Plaintiff, Cross-defendant and Appellant, v.
SHASTA LIVESTOCK AUCTION YARD, INC., Defendant,
Cross-complainant and Respondent.

## COUNSEL

T. James Fisher and Fisher & Wyatt for Plaintiff, Cross-defendant and Appellant.

Matthew J. McAlerney and Weintraub, Genshlea, Hardy, Erich & Brown for Defendant, Cross-complainant and Respondent.

## OPINION

**SIMS, J.**—In this case, we consider whether an employee can sue his employer in tort on a theory of respondeat superior for injuries caused by another employee's consumption of alcoholic beverages in the scope of her employment. We conclude that where an employee consumes alcohol in the scope of his or her employment, the employer is liable for injuries proximately caused to members of the public by the consumption of alcohol. Neither Civil Code section 1714 nor Business and Professions Code section 25602 immunizes the employer from respondeat superior liability. However, we also conclude the present tort action is barred by the exclusive remedy provisions of the workers' compensation act. (Lab. Code, §§ 3600-3602; all further nondescript statutory references are to the Lab. Code.)

### PROCEDURAL HISTORY AND FACTS

Plaintiff Mike Childers appeals from a summary judgment granted his employer defendant Shasta Livestock Auction Yard (Shasta) in plaintiff's action for personal injuries. Plaintiff seeks damages from Shasta on the theory of respondeat superior, asserting Shasta is vicariously liable for the torts of another employee, Toni JoAnn Abbott. The trial court entered summary judgment in favor of Shasta. Plaintiff contends there are triable issues of material fact with respect to whether Abbott was acting within the scope of her employment so as to make Shasta vicariously liable for her torts. Plaintiff also asserts his cause of action is not barred by the workers' compensation act.

With immaterial exceptions the facts are undisputed.

On Friday, September 7, 1984, plaintiff, Vern Smith, and Toni JoAnn Abbott were employees of Shasta working at the auction yard. John Suther, Shasta's yard foreman, was to be married the next day. After work about 6 p.m. on September 7, Suther, who was on his way to his wedding rehearsal, took plaintiff and Smith from the auction yard to his house, where he gave Smith a set of keys to the yard premises, so plaintiff and Smith could be in charge of the yard the next day. Suther also told plaintiff and Smith, "Go have a beer." Plaintiff and Smith knew Suther intended they get the beer from Shasta's office.

Plaintiff and Smith returned to the auction yard and went with another employee to the office where liquor was kept. They got some six packs of beer from the office and went outside where they met Toni Abbott who was off work. Abbott took some beer from the six packs and began drinking. Later, plaintiff, Abbott and Smith went into the office and began drinking Shasta's hard liquor with one of Shasta's customers, Mike Roston.

About 10 p.m., plaintiff, Smith and Abbott left the auction yard in Abbott's truck to go feed Abbott's horses. Abbott drove the truck off the road; she was killed and plaintiff was injured.

It was a regular practice for Shasta to furnish alcoholic beverages on the premises to customers of the auction yard. Most of Shasta's employees had consumed alcoholic beverages in the office where they were kept, particularly on Friday nights. During the year before the accident, Toni Abbott had drunk alcoholic beverages furnished by the auction yard on the premises on at least 10 occasions with the knowledge, permission and participation of Shasta management.

DISCUSSION

I

*Defendant has failed to show it is not liable for Toni Abbott's negligence on a theory of respondeat superior unless plaintiff's exclusive remedy is under the workers' compensation laws.*

Plaintiff first contends the evidence was sufficient to survive summary judgment on the question whether Shasta is liable for Toni Abbott's negligence.

■■■■■ Our review of the summary judgment is governed by rules recently summarized by our Supreme Court in *Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18 [210 Cal.Rptr. 762, 694 P.2d 1134]: "The summary judgment

procedure, inasmuch as it denies the right of the adverse party to a trial, is drastic and should be used with caution. [Citation.] Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is no issue of fact to be tried. [Citations.] [¶] 'The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory.' [Citation.] 'The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion.' [Citation.] '. . .[I]ssue finding rather than issue determination is the pivot upon which the summary judgment law turns.' [Citation.]" (Pp. 35-36.)

A. *Toni Abbott was within the scope of her employment at the time of the accident.*

Here, plaintiff has expressly disavowed reliance on a theory that Shasta was liable to him because it negligently furnished alcohol to Toni Abbott. Plaintiff's sole claim is that Shasta is liable to him for Abbott's negligence on the theory of respondeat superior. Putting aside for the moment the question whether plaintiff has an exclusive remedy under the workers' compensation laws, we agree with plaintiff.

An employer's liability without fault for the acts of his employees is imposed by Civil Code section 2338, which provides in relevant part that "a principal is responsible to third parties for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, . . ." This statute has long been held to reflect the common-law doctrine of respondeat superior. (*Bank of California* v. *Western Union Tel. Co.* (1877) 52 Cal. 280, 287-289 .)

In *Perez* v. *Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962 [227 Cal.Rptr. 106, 719 P.2d 676], our Supreme Court recently discussed the underpinnings of the respondeat superior doctrine as follows: "Under the doctrine of respondeat superior, an employer is vicariously liable for his employee's torts committed within the scope of the employment. This doctrine is based on ' "a rule of policy, a deliberate allocation of a risk. The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business." ' (*Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 959-960 [88 Cal.Rptr. 188, 471 P.2d 988], quoting Prosser, Law of Torts (3d ed. 1964) p. 471.) Three reasons have been suggested for imposing liability on an enterprise for the risks incident to the enterprise: '(1) [I]t tends to provide a spur toward accident prevention; (2) it tends to provide greater assurance of compensation for

accident victims, and (3) at the same time it tends to provide reasonable assurance that, like other costs, accident losses will be broadly and equitably distributed among the beneficiaries of the enterprises that entail them.' (5 Harper et al., The Law of Torts (2d ed. 1986) § 26.5, p. 21, fns. omitted; see also *Johnston* v. *Long* (1947) 30 Cal.2d 54, 64 [181 P.2d 645] ['The principal justification for the application of the doctrine of *respondeat superior* in any case is the fact that the employer may spread the risk through insurance and carry the cost thereof as part of his costs of doing business.'].)

"In some respects, the rationale underlying respondeat superior is similar to that underlying the Workers' Compensation Act. Both fields of law allow recovery for the injured party irrespective of proof of the employer's fault. Both are concerned with the allocation of the cost of industrial injury. (*Hinman, supra,* 2 Cal.3d at p. 962 fn. 3.) 'The proper test [for respondeat superior] bears far more resemblance to that which limits liability for worker's compensation than to the test for negligence. The employer should be held to expect risks, to the public also, which arise "out of and in the course of" his employment of labor.' (5 Harper et al., *supra,* § 26.7, pp. 28-31.) Thus, under California law, an employer is liable for risks 'arising out of the employment.' (*George* v. *Bekins Van & Storage Co.* (1949) 33 Cal.2d 834, 843 [205 P.2d 1037]; *Carr* v. *Wm. C. Crowell Co.* (1946) 28 Cal.2d 652, 657 [171 P.2d 5].)

"A risk arises out of the employment when 'in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. [Citations.] In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one "that may fairly be regarded as typical of or broadly incidental" to the enterprise undertaken by the employer. [Citation.]' (*Rodgers* v. *Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 619 [124 Cal.Rptr. 143].) Accordingly, the employer's liability extends beyond his actual or possible control of the employee to include risks inherent in or created by the enterprise. (*Hinman, supra,* 2 Cal.3d at p. 960.)" (*Id.,* at pp. 967-968; see also *Mesler* v. *Bragg Management Co.* (1985) 39 Cal.3d 290, 302 [216 Cal.Rptr. 443, 702 P.2d 601].)

But how is it determined that an employee's tortious act is a risk "aris[ing] out of the employment" or "inherent in or created by the enterprise"? (*Ibid.*)

Whether the risk of an employee's tort arises out of the enterprise is often determined by asking whether the tort occurs at a time and place where the employee performs his or her usual duties for the employer. (See Rest.2d Agency, § 228.) The most obvious cases are therefore ones in which the employee commits a tortious act while performing his or her ordinary duties

for the employer at the employer's place of business. In such circumstances, the employer is ordinarily liable for the employee's tortious act, even if wholly unauthorized and without benefit to the employer. (See *Perez, supra,* 41 Cal.3d at pp. 969-970.) Thus, in *Perez,* the employer was held liable for injuries to an unauthorized passenger on a tractor being used by an employee to disc the employer's fields: "The presence of an unauthorized passenger was insufficient to take [the employee] outside the scope of his employment since he was still carrying out his employer's business. [Citation.]" (*Id.,* at p. 970.)

Conversely, where, as here, an employee has left his or her ordinary place of work to return home, the employee is usually deemed to be beyond the scope of employment. ■ "Under the so-called 'going and coming rule,' an employee is not regarded as acting within the scope of his employment while going to or coming from his place of work. [Citations.] The courts, however, have recognized several exceptions to the 'going and coming' rule. . . . An exception has . . . been recognized where a negligent act was committed while the employee was engaged in a special errand for the employer. [Citations.]" (*Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707, 722-723 [159 Cal.Rptr. 835, 602 P.2d 755], see *Lazar* v. *Thermal Equipment Corp.* (1983) 148 Cal.App.3d 458 [195 Cal.Rptr. 890].)

An example of the "special errand" exception to the "going and coming" rule is found in *Boynton* v. *McKales* (1956) 139 Cal.App.2d 777 [294 P.2d 733]. There, an employer was held liable when an intoxicated employee who had attended a company banquet off the employer's premises ran into plaintiff while driving home. The court concluded that since the banquet was intended to benefit the employer and the employee's attendance was expected, the employee's travel fell with the "special errand" exception. (*Id.,* at p. 789.)

In this case, plaintiff makes no contention that Toni Abbott was on a special errand for Shasta when she left her usual place of work and drove her own vehicle to feed her own horses. The "special errand" exception to the "going and coming rule" is inapplicable. (See, e.g., *Henderson* v. *Adia Services, Inc.* (1986) 182 Cal.App.3d 1069, 1073-1076 [227 Cal.Rptr. 745]; *Munyon* v. *Ole's, Inc.* (1982) 136 Cal.App.3d 697, 703-704 [186 Cal.Rptr. 424].)

■ However, this conclusion does not mean plaintiff's reliance on the doctrine of respondeat superior is misplaced. Plaintiff has pled and asserts another theory that operates as another exception to the "going and coming rule." Plaintiff contends that Toni Abbott consumed alcohol in the scope of her employment, that Abbott's consumption created a risk of danger, and that the risk was a proximate cause of the accident and of plaintiff's injuries,

so that Shasta is properly liable even though the accident occurred while Abbott was going from work. Except for the possible exclusivity of plaintiff's workers' compensation remedy, plaintiff is correct.

Several California cases have allowed nonemployee third parties to recover from employers for the tortious conduct of employees, where the tortious conduct was a foreseeable risk of the employee's consumption of alcohol occurring after ordinary working hours but within the scope of employment. (See, e.g., *Harris* v. *Trojan Fireworks Co.* (1981) 120 Cal.App.3d 157 [174 Cal.Rptr. 452] [complaint against employer survived demurrer where it alleged employee became intoxicated at company Christmas party and caused automobile accident]; *Rodgers* v. *Kemper Constr. Co.* (1975) 50 Cal.App.3d 608 [124 Cal.Rptr. 143] [discussed below], cited with approval in *Perez* v. *Van Groningen & Sons, Inc., supra,* 41 Cal.3d at p. 968 and in *Mesler* v. *Bragg Management Co., supra,* 39 Cal.3d at p. 302; see also *Wank* v. *Richman & Garrett* (1985) 165 Cal.App.3d 1103 [211 Cal.Rptr. 919]. Cf. *Brockett* v. *Kitchen Boyd Motor Co.* (1968) 264 Cal.App.2d 69 [70 Cal.Rptr. 136]; *Calrow* v. *Appliance Industries, Inc.* (1975) 49 Cal.App.3d 556, 571 [122 Cal.Rptr. 636] [employer not liable where employee consumed alcohol after working hours where no benefit to employer and drinking was not a customary incident of the employment].)

Clearly the leading case in this area is *Rodgers* v. *Kemper Constr. Co., supra,* 50 Cal.App.3d 608, where the court upheld a jury verdict holding an employer liable for injuries caused when two employees, who had consumed alcohol on the employer's premises after work, assaulted two nonemployees at a construction site. As in the instant case, the evidence showed it was customary, particularly on Friday nights, for the employees to drink beer with their supervisors on the employer's premises after work. (*Id.,* at p. 620.)

*Rodgers* announced two tests to determine whether the risk created by the employees' consumption of alcohol was inherent in or created by the business enterprise. The first is one of foreseeability of the risk: "One way to determine whether a risk is inherent in, or created by, [a business] enterprise is to ask whether the actual occurrence was a generally foreseeable consequence of the activity. However, 'foreseeability' in this context must be distinguished from 'foreseeability' as a test for negligence. In the latter sense 'foreseeable' means a level of probability which would lead a prudent person to take effective precautions whereas 'foreseeability' as a test for *respondeat superior* merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. [Citations.] In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one 'that may fairly be regarded as typical of or broadly incidental' to the enterprise undertaken by

the employer. [Citation.]" (Pp. 618-619.) *Rodger*'s foreseeability test has been widely followed by the courts of appeal and was recently approved by our Supreme Court in *Perez*. (See, *Perez, supra,* 41 Cal.3d at p. 968; *Brittell v. Young* (1979) 90 Cal.App.3d 400, 406 [153 Cal.Rptr. 387]; *Clark Equipment Co. v. Wheat* (1979) 92 Cal.App.3d 503, 522 [154 Cal.Rptr. 874]; *Spahn v. Guild Industries Corp.* (1979) 94 Cal.App.3d 143, 155 [156 Cal.Rptr. 375]; *Harris v. Trojan Fireworks Co., supra,* 120 Cal.App.3d at p. 163; *Munyon v. Ole's, Inc., supra,* 136 Cal.App.3d at p. 705; *Lazar v. Thermal Equipment Corp., supra,* 148 Cal.App.3d at p. 464; *Wank v. Richman & Garrett, supra,* 165 Cal.App.3d at p. 1111.)

*Rodgers* also announced a second, more specific test to determine whether employees who engage in recreational or social pursuits after working hours are within the scope of their employment for purposes of respondeat superior liability. *Rodgers* borrowed this test from *McCarty v. Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 677 [117 Cal.Rptr. 65, 527 P.2d 617], a case construing workers' compensation law. In *McCarty,* our Supreme Court ordered payment of workers' compensation death benefits to the wife of an intoxicated employee who was killed when he drove his car into a light pole after he had attended a company Christmas party. (12 Cal.3d at p. 680.) Concluding the "going and coming" rule was inapplicable, the court stated, "if the proximate cause [of death] is of industrial origin, the time and place of injury or death even if foreign to the premises does not serve to nullify recovery." (*Id.,* at p. 681.)

■ *McCarty* announced the following test (summarized in *Rodgers*) to determine whether a risk created by after-work recreational or social activities is "of industrial origin": "where social or recreational pursuits on the employer's premises after hours are endorsed by the express or implied permission of the employer and are 'conceivably' of some benefit to the employer *or,* even in the absence of proof of benefit, if such activities have become 'a customary incident of the employment relationship,' an employee engaged in such pursuits after hours is still acting within the scope of his employment. [Citation.]" (*Rodgers v. Kemper Constr. Co., supra,* 50 Cal.App.3d at p. 620, italics in original.)

Applying the test, the *McCarty* court found the Christmas party was of conceivable benefit to the employer because it fostered company comradeship and provided an occasion for discussion of company business. (*McCarty, supra,* 12 Cal.3d at p. 682.) The court concluded the employee's attendance at the party (and his consequent intoxication) fell within the "scope of his employment." (*Id.,* at p. 683.)

We conclude the *McCarty/Rodgers* test of respondeat superior liability is properly applied where an employee undertakes activities within his or her

scope of employment that cause the employee to become an instrumentality of danger to others even where the danger may manifest itself at times and locations remote from the ordinary workplace. To pick an obvious hypothetical example, suppose an employee manufacturing radioactive fuel becomes contaminated on the job and later contaminates nonemployees while playing basketball at a gym far from the jobsite, causing them injury. In this example, plainly the risk of injury is created by the enterprise; we have no doubt the enterprise should fairly bear the cost of injury. So long as the risk is created within the scope of the employee's employment, the scope of employment must follow the risk so long as it acts proximately to cause injury.[1]

We are aware that one test of "scope of employment" under *McCarty* is whether the employee's conduct was of benefit to the employer and that in *Perez* v. *Van Groningen & Sons, Inc., supra,* 41 Cal.3d 962 the court concluded, "There is no requirement that an employee's act benefit an employer for respondeat superior [liability] to apply." (*Id.,* at p. 969.) However, even if benefit to an employer may not be asserted as a *necessary* prerequisite to liability, it does not follow that such benefit must be eliminated as a relevant factor determining whether conduct falls within the "scope of employment." ▮ Where, as here, the question is whether an employee's social or recreational conduct after ordinary working hours is within the scope of employment or is purely personal, we think benefit to the employer must remain a relevant consideration. Whether an employee performs any service to an employer has traditionally been an important test to determine whether employees who are engaged in facially personal activities are, in fact, within the scope of their employment. (See, e.g., *Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 961 [88 Cal.Rptr. 188, 471 P.2d 988]; *Robinson* v. *George* (1940) 16 Cal.2d 238, 244-245 [105 P.2d 914], and authorities there cited; Rest.2d Agency, § 228.) Were we to abandon the benefit-to-the-employer test in the circumstances shown here, we fear the line between an employee's purely personal conduct and conduct subjecting an employer to liability would become like a watercolor wash: there somewhere. We shall therefore ask, among other things, whether Toni Abbott's consumption of alcohol was of benefit to Shasta.

▮ Resolving any doubts in favor of plaintiff, as we must (*Mann* v. *Cracchiolo, supra,* 38 Cal.3d at pp. 35-36), we have no doubt the evidence on the motion showed that Toni Abbott's consumption of alcohol[2] on the

---

[1]Although we do not rely on it as precedent for the respondeat superior rule, we note that in *Parks* v. *Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 585 at pages 588-589 [190 Cal.Rptr. 158, 660 P.2d 382], our Supreme Court held the "course of employment" follows the risk for purposes of workers compensation coverage, as we shall explain in part II, *post.*

[2]No evidence submitted on the motion for summary judgment showed Abbott was intoxicated. However, plaintiff pleaded her consumption of alcohol was a proximate cause of the accident and of plaintiff's injuries. Defendant presented no evidence to the contrary. Since it was defendant's duty to go forward with evidence contravening these pleaded assertions (*Conn* v. *National Can Corp.* (1981) 124 Cal.App.3d 630, 639 [177 Cal.Rptr. 445]), on review we accept them as true.

night of the accident met all prongs of the *McCarty/Rodgers* test of scope of employment, i.e., that the activity was undertaken with Shasta's permission, was of benefit to Shasta, and was a customary incident of Abbott's employment. Yard foreman John Suther's entrustment of the keys to the auction yard premises, together with his instructions to "Go get a beer," were sufficient to grant to plaintiff and Smith agency authority to obtain alcohol from the employer's locked premises. (Civ. Code, §§ 2295, 2296, 2299, 2304, 2309; see, e.g., *Spahn* v. *Guild Industries Corp., supra,* 94 Cal.App.3d at p. 156.) Evidence on the motion showed Abbott consumed alcohol with the permission of plaintiff and Smith on the evening in question, in line with what had become a regular Friday night institution at the auction yard, when the three entered the office and drank Shasta's hard liquor with customer Roston. Abbott's consumption of liquor was therefore with the express and implied permission of Shasta and was a customary incident of her employment. Moreover, the evidence showed Shasta routinely furnished alcohol on the premises to customers and employees to encourage good customer relations. The fact that Abbott drank with Shasta's customer Roston is sufficient evidence of benefit to Shasta to defeat a motion for summary judgment. Finally, Abbott's subsequent negligent driving was a clearly foreseeable risk of her consumption of alcohol and, therefore, of Shasta's business enterprise. (*Harris* v. *Trojan Fireworks Co., supra,* 120 Cal.App.3d at p. 164.)

 Abundant evidence showed Abbott's consumption of alcohol occurred within the scope of her employment, thereby creating a risk that was a proximate cause of plaintiff's injuries. Since the risk created by the enterprise was still acting as a proximate cause of injury at the time of the accident, Toni Abbott was within the scope of her employment when the accident occurred. (*Perez* v. *Van Groningen & Sons, Inc., supra,* 41 Cal.3d at p. 968; *McCarty* v. *Workmen's Comp. Appeals Bd., supra,* 12 Cal.3d at p. 681; *Harris* v. *Trojan Fireworks Co., supra,* 120 Cal.App.3d at p. 164; *Rodgers* v. *Kemper Constr. Co., supra,* 50 Cal.App.3d at p. 620.) Toni Abbott's wrongful act was undertaken "in and as a part of the transaction of [Shasta's] business" as required by Civil Code section 2338. The evidence was plainly sufficient to defeat a motion for summary judgment unless the respondeat superior theory discussed in the preceding cases is barred by statute. (Code Civ. Proc., § 437c, subd. (c).)

B. *Shasta is not immunized from liability by Civil Code section 1714 or Business and Professions Code section 25602.*

 Civil Code section 1714, subdivision (c) and Business and Professions Code section 25602, subdivision (b), set forth in the margin,[3] prescribe

---

[3]The two statutes provide in their entirety: Civil Code section 1714 provides: "(a) Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned

immunities from liability for those who furnish alcohol to others. (See, e.g., *Strang* v. *Cabrol* (1984) 37 Cal.3d 720 [209 Cal.Rptr. 347, 691 P.2d 1013]; *Cory* v. *Shierloh* (1981) 29 Cal.3d 430 [174 Cal.Rptr. 500, 629 P.2d 8]; *Cully* v. *Bianca* (1986) 186 Cal.App.3d 1172 [231 Cal.Rptr. 279]; *DeBolt* v. *Kragen Auto Supply, Inc.* (1986) 182 Cal.App.3d 269 [227 Cal.Rptr. 258]; *Bass* v. *Pratt* (1986) 177 Cal.App.3d 129 [222 Cal.Rptr. 723]; *Sagadin* v. *Ripper* (1985) 175 Cal.App.3d 1141, 1154 [221 Cal.Rptr. 675].) By its terms, subdivision (c) of Civil Code section 1714 limits the liability of any "social host." (All subsequent references to section 1714 are to this statute.) Business and Professions Code section 25602, subdivision (b) on its face applies to all persons, not just social hosts. (All subsequent references to section 25602 are to this statute.) We need not resolve whether section 1714 grants immunities to those other than "social hosts." If the facially broader language of section 25602 does not bar plaintiff's suit, then subdivision (c) of section 1714 does not either. We shall therefore focus on section 25602.

It has been said that the immunity granted by subdivision (b) of section 25602 is inapplicable "when an employer is involved in serving alcohol to employees at office parties or other business sponsored off-the-premises parties. [Citations.]" (*DeBolt* v. *Kragen Auto Supply, Inc., supra,* 182 Cal.App.3d at p. 275.) *DeBolt* traces the rule to a conclusionary footnote in *Harris* v. *Trojan Fireworks Co., supra,* 120 Cal.App.3d 157. (At p. 165, fn. 7.) *Harris's* avoidance of the statutory immunities has been criticized in a

---

to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. The extent of liability in such cases is defined by the Title on Compensatory Relief. [¶] (b) It is the intent of the Legislature to abrogate the holdings in cases such as *Vesely* v. *Sager* (5 Cal.3d 153), *Bernhard* v. *Harrah's Club* (16 Cal.3d 313 ), and *Coulter* v. *Superior Court* (21 Cal.3d 144) and to reinstate the prior judicial interpretation of this section as it relates to proximate cause for injuries incurred as a result of furnishing alcoholic beverages to an intoxicated person, namely that the furnishing of alcoholic beverages is not the proximate cause of injuries resulting from intoxication, but rather the consumption of alcoholic beverages is the proximate cause of injuries inflicted upon another by an intoxicated person. [¶] (c) No social host who furnishes alcoholic beverages to any person shall be held legally accountable for damages suffered by such person, or for injury to the person or property of, or death of, any third person, resulting from the consumption of such beverages."

Business and Professions Code section 25602 provides: "(a) Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any habitual or common drunkard or to any obviously intoxicated person is guilty of a misdemeanor. [¶] (b) No person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage pursuant to subdivision (a) of this section shall be civilly liable to any injured person or the estate of such person for injuries inflicted on that person as a result of intoxication by the consumer of such alcoholic beverage. [¶] (c) The Legislature hereby declares that this section shall be interpreted so that the holdings in cases such as *Vesely* v. *Sager* (5 Cal.3d 153), *Bernhard* v. *Harrah's Club* (16 Cal.3d 313) and *Coulter* v. *Superior Court* (21 Cal.3d 144) be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages rather than the serving of alcoholic beverages as the proximate cause of injuries inflicted upon another by an intoxicated person."

law review comment. (Comment, *Employer Liability for a Drunken Employee's Actions Following an Office Party: A Cause of Action Under Respondeat Superior* (1982) 19 Cal. Western L.Rev. 107, 133-134.) However, we shall conclude the criticism is unwarranted, because section 25602 does not have anything to do with respondeat superior liability.

Subdivision (b) of section 25602 immunizes those who sell, furnish, give or cause to be sold, furnished, or given away an alcoholic beverage. The statute has no effect on respondeat superior liability because that liability is not premised on the employer's selling, furnishing or giving alcohol to another, nor on the employer's causing alcohol to be supplied in any manner to another. Thus, for example, the employee whose conduct subjects the employer to liability may consume alcohol furnished by other employees with the employer's permission. (See *Rodgers* v. *Kemper Constr. Co., supra,* 50 Cal.App.3d at pp. 615, 620.) Or, for purposes of maintaining good client relations, the employee may be required to attend a social event where the client, not the employer, furnishes the alcohol. (Cf. *Wank* v. *Richman & Garrett, supra,* 165 Cal.App.3d 1103.)

As these cases (and the one before us) illustrate, the employer's liability is premised upon a sufficient showing that the employee's *consumption* of alcohol was a customary incident of the employment and was sufficiently of benefit to the employer to fall within the "scope of employment." (*Rodgers* v. *Kemper Constr. Co., supra,* 50 Cal.App.3d at p. 620.) Once the risk (the consumption of alcohol) is shown to have been created within the scope of employment, the doctrine of respondeat superior makes the employer liable for injuries proximately caused by the risk. This happens regardless of whether the employer ever serves alcohol or causes it to be served, because, as we have seen, imposition of respondeat superior liability does not depend on the employer's undertaking any act or upon any fault by the employer. (Civ. Code, § 2338; *Perez* v. *Van Groningen & Sons, Inc., supra,* 41 Cal.3d at p. 967; *Hinman* v. *Westinghouse Elec. Co., supra,* 2 Cal.3d at p. 960.) Since the employer is liable for the risk of an employee's consumption of alcohol within the employee's scope of employment, and regardless of the employer's furnishing of alcohol, the immunity of subdivision (b) of section 25602 is inapplicable.

We also find support for this conclusion in the legislative intent of section 25602 as set forth in its subdivision (c). That subdivision says the immunity section is designed to abrogate the cited judicial decisions "in favor of prior judicial interpretation finding the consumption of alcoholic beverages rather than the serving of alcoholic beverages as the proximate cause of injuries inflicted upon another by an intoxicated person." (See fn. 3, *ante.*) "Subdivision (b) of Civil Code section 1714 and subdivision (c) of section 25602 reinstate the judicial interpretation on the subject of alcoholic-

beverage-provider liability which existed prior to the *Vesely-Bernhard-Coulter*[4] decisions. The prior common law was typified by *Cole* v. *Rush* (1955) 45 Cal.2d 345 [289 P.2d 450, 54 A.L.R.2d 1137], which held the consumption, not the furnishing, of alcoholic beverages to be the proximate cause of injuries resulting from intoxication. [Citations.]" (*Strang* v. *Cabrol, supra,* 37 Cal.3d at p. 725.)

Since the employer's respondeat superior liability derives from the employee's consumption of alcohol, and not from the employer's furnishing, liability is entirely consistent with the command of subdivision (c) of section 25602 that the consumption rather than the serving of alcoholic beverages is the proximate cause of injury to another.

Furthermore, respondeat superior liability is consistent with *Cole* v. *Rush* (1955) 45 Cal.2d 345 [289 P.2d 450, 54 A.L.R.2d 1137]. In *Cantor* v. *Anderson* (1981) 126 Cal.App.3d 124 [178 Cal.Rptr. 540] (approved in *Strang* v. *Cabrol, supra,* 37 Cal.3d at pp. 725-726) this court concluded a return to the rule of *Cole* also included a return to the limitations of the rule. (*Id.,* at p. 130.) In *Cole,* the Supreme Court held a widow and minor children could not maintain a wrongful death action against the owners of a bar that furnished alcohol to the decedent who became belligerent and was killed in a fight in which he was the attacker. (45 Cal.2d at pp. 347-348, 352.) However, the court took pains to distinguish the case from others that had allowed guests injured by patrons who had been served alcohol to recover from the saloonkeepers who had served them. (*Id.,* at pp. 352-353.) The *Cole* court noted that the liability of the saloonkeepers in the distinguished cases was based on the independent duty of providing a safe environment for patrons. (*Ibid.*) Here, as we have noted, the employer's liability also exists for reasons wholly independent of any duty relating to the furnishing of alcohol to another.

Moreover, as we have seen, the California common law prior to the *Vesely-Berhard-Coulter* decisions recognized an employer could be liable on a theory of respondeat superior to a third party injured by an employee's driving while intoxicated, where the employee had consumed the alcohol within the scope of his employment. (*Boynton* v. *McKales, supra,* 139 Cal.App.2d at pp. 780, 789-790; see Note, *Expanding Third Party Liability for Failure to Control the Intoxicated Employee Who Drives: Otis Engineering Corp.* v. *Clark* (1985) 18 Conn.L.Rev. 155, 166.)

Finally, we think that, in addition to being entirely congruent with the

---

[4] *Vesely* v. *Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151]; *Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313 [128 Cal.Rptr. 215, 546 P.2d 719]; *Coulter* v. *Superior Court* (1978) 21 Cal.3d 144 [145 Cal.Rptr. 534, 577 P.2d 669].

language and intent of sections 1714 and 25602, the result we reach is just. Social entertainment plays an indispensable role in modern commercial enterprise. Entertainment is routinely used to attract, keep, and reward clients and customers. Alcoholic beverages are an equally common ingredient in the entertainment formulae of many businesses; alcohol is often the lubrication by which deals are made to go together. However, the abuse of alcohol by some is both foreseeable and extremely dangerous. Predictably, innocent people are occasionally injured or killed as a consequence of the negligence of those who have consumed alcohol at events that otherwise benefit a commercial enterprise. These injuries or deaths can shatter the lives of those affected by them. We think that if a commercial enterprise chooses to allow its employees to consume alcoholic beverages for the benefit of the enterprise, fairness requires that the enterprise should bear the burden of injuries proximately caused by the employees' consumption. In our view, nothing in the statutes precludes this result.

## II

*Shasta has met its burden of showing plaintiff has a remedy under the workers' compensation act.*

The trial court did not disagree with the conclusion we reach in part I, above. However, the court ruled that plaintiff's action was necessarily barred by the exclusive remedy provisions of the workers' compensation act. (§ 3602; see *Johns-Manville Products Corp.* v. *Superior Court* (1980) 27 Cal.3d 465 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758].) We agree.

A. *Shasta bore the burden of proving plaintiff satisfied the conditions of compensation under the workers' compensation act.*

Under the workers' compensation act, "A California employer's liability to compensate his employee for injury 'arising out of and in the course of the employment' is limited to those cases where certain specified conditions concur." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1986 rev.) § 8.01, p. 8-3, fn. omitted.) The conditions of entitlement to workers' compensation benefits, as here pertinent, are set forth in subdivision (a) of section 3600.[5] Section 3602 provides in pertinent part: "(a)

---

[5]As relevant here, subdivision (a) of section 3600 provides: "Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person ... shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur: [¶] (1) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division. [¶] (2) Where, at the time of the injury, the employee is performing service growing out of and ·incidental to his

Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is . . . the sole and exclusive remedy of the employee . . . against the employer, . . ." Unless it is shown that the conditions of compensation in section 3600 are satisfied, an employee may continue to pursue a common law tort action for damages against his or her employer. (§ 3602, subd. (c); *Doney* v. *Tambouratgis* (1979) 23 Cal.3d 91, 97 [151 Cal.Rptr. 347, 587 P.2d 1160]; *Popejoy* v. *Hannon* (1951) 37 Cal.2d 159, 173-174 [231 P.2d 484].)

■ Ordinarily, where an injured employee brings an action for damages against his or her employer, the burden is on the employer to plead and prove, as an affirmative defense, that the employee has satisfied all conditions of entitlement to workers' compensation benefits. (*Doney* v. *Tambouratgis, supra,* 23 Cal.3d at p. 97.) "An exception to this general rule of pleading and proof by the defendant appears in the situation where the complaint affirmatively alleges facts indicating coverage by the act. Then, unless the complaint goes on to state additional facts which would [negate] the application of the act, no civil action will lie and the complaint is subject to a general demurrer. [Citations.]" (*Ibid.*) This latter rule has been held applicable to a summary judgment proceeding. (*Halliman* v. *Los Angeles Unified School Dist.* (1984) 163 Cal.App.3d 46, 50 [209 Cal.Rptr. 175].)

■ Citing *Doney*, defendant Shasta makes a half-hearted claim that allegations in plaintiff's first amended complaint served to shift the burden of proof on the issue of workers' compensation coverage to plaintiff. However, the complaint merely alleges that plaintiff was an employee of Shasta "up to and including" the date of the accident. This conclusional allegation is insufficient to show the conditions of compensation under section 3600 have been satisfied. Indeed, Shasta admits the allegation would survive demurrer. We conclude the allegation does not serve to shift to plaintiff the burden of proving plaintiff's compliance with section 3600; the burden remains Shasta's. (*Doney, supra,* 23 Cal.3d at pp. 97-98.)

---

or her employment and is act ing within the course of his or her employment. [¶] (3) Where the injury is proximately caused by the employment, either with or without negligence. [¶] (4) Where the injury is not caused by the intoxication of the injured employee. [¶] (5) Where the injury is not intentionally self-inflicted. [¶] (6) Where the employee has not willfully and deliberately caused his or her own death. [¶] (7) Where the injury does not arise out of an altercation in which the injured employee is the initial physical aggressor. [¶] (8) Where the injury is not caused by the commission of a felonious act by the injured employee, for which he or she has been convicted. [¶] (9) Where the injury does not arise out of voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the employee's work-related duties, except where these activities are a reasonable expectancy of, or are expressly or impliedly required by, the employment. The administrative director shall promulgate reasonable rules and regulations requiring employers to post and keep posted in a conspicuous place or places a notice advising employees of the provisions of this subdivision. Failure of the employer to post the notice shall not constitute an expression of intent to waive the provisions of this subdivision."

We will therefore determine whether Shasta has showed that plaintiff has satisfied the statutory conditions of compensation.[6]

B. *Shasta has showed that plaintiff has satisfied the conditions of compensation under section 3600.*

1. *Plaintiff has satisfied subdivisions (a)(1) through (a)(8) of section 3600.*

Of the first eight subdivisions of section 3600, the parties dispute only whether plaintiff has satisfied subdivision (a)(2), which requires that, "at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment."[7] Plaintiff contends his employment ended as a matter of law when he left Shasta's premises. However, we shall conclude plaintiff was injured by a "special risk" created by the employment and was therefore within the course of his employment at the time of the accident.

■ As with the doctrine of respondeat superior, the law of workers' compensation recognizes that an employee is usually outside the course of employment while going to or returning from work. (*Santa Rosa Junior College* v. *Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 345, 351 [220 Cal.Rptr. 94, 708 P.2d 673].) The workers' compensation "going and coming" rule is also subject to various exceptions, one being where the employee is injured off the employer's premises by a "special risk" causally related to employment. (*Id.,* at pp. 353-354; *General Ins. Co.* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 595, 600 [128 Cal.Rptr. 417, 546 P.2d 1361], hereafter *Chairez.*)

■ "An employee will be 'entitled to compensation, if the employment creates a special risk, for injuries sustained within the field of that risk. Such a risk may attend the employee as soon as he enters the employer's premises or the necessary means of access thereto, even when the latter is not under the employer's control or management. [Citations.]' (*Freire* v. *Matson Navigation Co.* (1941) 19 Cal.2d 8, 11 [118 P.2d 809], hereafter *Freire; Chairez, supra,* 16 Cal.3d at p. 600.)

"This principle applies when the employee is entering *or leaving* the employer's premises. (*Makins* v. *Industrial Acc. Com.* (1926) 198 Cal. 698,

---

[6]We are not unaware that this scenario resembles one in which Perry Mason plays the prosecutor.

[7]Thus, for example, plaintiff does not assert subdivision (a)(4) precludes coverage on account of any intoxication of plaintiff. Since Shasta tolerated and encouraged plaintiff's drinking, Shasta is estopped to assert the intoxication defense. (*McCarty* v. *Workmen's Comp. Appeals Bd., supra,* 12 Cal.3d at p. 684.)

701 [247 P. 202, 49 A.L.R. 411], italics added.) Furthermore, '[t]he fact[ ] that an accident happens upon a public road and that the danger is one to which the general public is likewise exposed . . . do[es] not preclude the existence of a causal relationship between the accident and the employment if the danger is one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree. [Citations.]' (*Freire, supra,* 19 Cal.2d at p. 12; accord, *Pacific Indem. Co.* v. *Industrial Acc. Com.* (1946) 28 Cal.2d 329, 338 [170 P.2d 18] . . .; *Chairez, supra,* 16 Cal.3d at p. 600.)

"Synthesizing concepts from these and other older cases, this court in *Chairez* devised a two-prong test to determine applicability of the special risk exception. *Chairez* held that the exception will apply (1) if 'but for' the employment the employee would not have been at the location where the injury occurred and (2) if 'the risk is distinctive in nature or quantitatively greater than risks common to the public.' (*Chairez, supra,* 16 Cal.3d at pp. 600-601.)" (*Parks* v. *Workers' Comp. Appeals Bd., supra,* 33 Cal.3d 585, 589-590.)

Reviewing the authorities from various jurisdictions, a leading commentator has postulated "a workable explanation of the ['special risk'] exception to the premises rule: it is not proximity, or reasonable distance, or even the identifying of surrounding areas with the premises: it is simply that, when a court has satisfied itself that there is a distinct 'arising out of' or causal connection between the conditions under which claimant must approach and leave the premises and the occurrence of the injury, it may hold that the course of employment extends as far as those conditions extend." (1 Larson's Workmen's Compensation Law, § 15.15, p. 4-60, fn. omitted.)

We think the "special risk" exception to the "going and coming" rule applies here.

Clearly the second prong of the *Chairez* test is satisfied in this case, i.e., "the risk is distinctive in nature or quantatively greater than risks common to the public." (*Chairez, supra,* 16 Cal.3d at p. 601.) Employees were encouraged to drink together on Shasta's premises, from which they would be departing by automobile. Shasta's encouragement of alcohol consumption created a special risk to employees, like Toni Abbott, who left the premises in their vehicles, because their driving skills would tend to be more impaired than the skills of members of the public who had not consumed alcohol. It was also entirely foreseeable that some employees who participated in the drinking would return home with other employees. (Cf. *Rhodes* v. *Workers' Comp. Appeals Bd.* (1978) 84 Cal.App.3d 471 [148 Cal.Rptr. 713].) Thus, Shasta's encouragement of the drinking also created a special risk for

employees, such as plaintiff, who participated in the drinking and returned home with other employees.

The other prong of the *Chairez* test is whether the employee would have been at the location where the injury occurred but for the employment. (*Chairez, supra,* 16 Cal.3d at p. 600; *Parks* v. *Workers' Comp. Appeals Bd., supra,* 33 Cal.3d at p. 590.) That test cannot be satisfied here. The employment did not cause plaintiff to be at the site of the accident on the way to feed Toni Abbott's horses. However, plaintiff's failure to satisfy this prong of the *Chairez* test is immaterial because the test is designed to establish a causal connection between employment and injury in cases bearing no resemblance to this one.

Unlike the instant case, *Chairez* did not involve a special risk created on the employer's premises before the employee left the premises. Rather, *Chairez* involved the claim of an employee who drove to work, parked his car on the street, and was struck by another car before he ever got to work. (*Chairez, supra,* 16 Cal.3d at p. 598.) The prong of the *Chairez* test with which we are immediately concerned was promulgated as a way to determine whether the injury was "causally related to his employment." (*Id.,* at p. 601.) *Chairez* reasoned no causal connection could be shown if, at the time of being struck, the employee was in a location where any other member of the public might have been. (*Ibid.*)

It is apparent this prong of the *Chairez* test has no application to the instant case. Here the causal connection between employment and injury is conclusively demonstrated by the employees' consumption of alcohol on the jobsite (and its consequent effect on driving skills), not by the employees' geographic location at the time of injury. In this case, the geographic location of the injury is simply immaterial to a resolution of the question whether the employment caused the injury. Since this prong of the *Chairez* test is fashioned for wholly different purposes and does not aid a determination of the ultimate issue (whether the injury was caused by the employment), we shall not apply the test here.

Rather, we think this case is ultimately governed by *McCarty* v. *Workmen's Comp. Appeals Bd., supra,* 12 Cal.3d 677. Although the *McCarty* court does not use the buzz words, "special risk," we think the case fits properly in that genre: the employee's widow was entitled to benefits because the employee's consumption of alcohol at the Christmas party created a special risk within the course of employment that acted proximately to cause injury to the employee at a location remote from the employer's premises. (*Id.,* at p. 681.)

We also note that denial of benefits to plaintiff would produce an anomalous result. Thus, had Toni Abbott survived, she, as the driver of the car, would have been clearly entitled to workers' compensation benefits under *McCarty*.[8] However, on the night of the accident, her conduct and that of plaintiff at the auction yard was in all material respects the same, as the trial court noted.[9] "Two co-employees, injured in the same accident and under identical employment circumstances, cannot logically be treated differently under the workmen's compensation law merely because one is the legal owner of, and the other a passenger in, the vehicle involved in the accident. [Citations.]" (*Hinojosa* v. *Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 162 [104 Cal.Rptr. 456, 501 P.2d 1176], *Rhodes* v. *Workers' Comp. Appeals Bd., supra,* 84 Cal.App.3d at p. 476.)

Finally, the workers' compensation act must be construed liberally in favor of coverage for an employee who is injured by another employee, even though in any given case application of the act might result in a lesser monetary recovery than could be obtained in a civil action. (§ 3202; *Gutierrez* v. *Petoseed Co.* (1980) 103 Cal.App.3d 766, 769 , fn. 3 [163 Cal.Rptr. 313].)

We therefore conclude because plaintiff was injured by a special risk created by his employment, he was within the course of his employment at the time of the accident. (*Parks, supra,* 33 Cal.3d at p. 592; *McCarty supra,* 12 Cal.3d at p. 682.) Plaintiff has satisfied subdivisions (a)(1) through (a)(8) of section 3600. The remaining question is whether subdivision (a)(9) of section 3600 precludes benefits. (All further references to subdivision (a)(9) are to this statute.)

2. *Plaintiff has satisfied subdivision (a)(9).*

In 1978, the Legislature amended the conditions of workers' compensation coverage set forth in section 3600 by adding what is now subdivision (a)(9),[10] currently providing in relevant part[11] that an employee is entitled to benefits only: "Where the injury does not arise out of voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the employee's work-related duties, except where these activities are

---

[8]We do not imply that appropriate claimants are not entitled to death benefits.

[9]If anything, plaintiff was more clearly within the course of his employment while drinking since he had been expressly instructed to do so by Shasta.

[10]The 1978 amendment originally added subdivision (h) to section 3600 (Stats. 1978, ch. 1303, § 5, p. 4262); the subdivision was renumbered subdivision (a)(8) and amended inconsequentially in 1982. (Stats. 1982, ch. 922, § 4, p. 3365.) The subdivision was renumbered from (a)(8) to (a)(9) in 1986. (Stats. 1986, ch. 755, § 1.)

[11]Subdivision (a)(9) of section 3600 also requires an employer to post in a conspicuous place a notice advising employees of the provisions of the subdivision. However, subdivision (a)(9) itself provides failure of the employer to post the notice does not waive the subdivision. (*Ezzy* v. *Workers' Comp. Appeals Bd.* (1983) 146 Cal.App.3d 252, 264 [194 Cal.Rptr. 90].)

a reasonable expectancy of, or are expressly or impliedly required by, the employment."

The requirement of subdivision (a)(9) that activities be a reasonable expectancy of the employment has been judicially construed to require both (1) an employee's subjective belief that his or her participation is required by the employer and (2) that the belief be objectively reasonable. (*Ezzy* v. *Workers' Comp. Appeals Bd., supra,* 146 Cal.App.3d 252, 260, followed in *Hughes Aircraft Co.* v. *Workers' Comp. Appeals Bd.* (1983) 149 Cal.App.3d 571, 574 [196 Cal.Rptr. 904] and *Meyer* v. *Workers' Comp. Appeals Bd.* (1984) 157 Cal.App.3d 1036, 1042 [204 Cal.Rptr. 74]; *Aetna Casualty & Surety Co.* v. *Workers' Comp. Appeals Bd.* (1986) 187 Cal.App.3d 922, 932 [232 Cal.Rptr. 257].)

 Shasta has shown plaintiff's participation was a reasonable expectancy of the employment. (See *Ezzy* v. *Workers' Comp. Appeals Bd., supra,* 146 Cal.App.3d at p. 264.) Here, the express instruction of yard boss Suther to plaintiff to "Go have a beer" on a Friday night when alcohol was regularly served to customers is sufficient to show an objectively reasonable belief that plaintiff's participation in the drinking was expected by his employer, Shasta. These facts distinguish the instant case from *Aetna Casualty & Surety Co.* v. *Workers' Comp. Appeals Bd., supra,* 187 Cal.App.3d 922, where the employees' after-work drinking was undertaken wholly without the employer's encouragement.

Admittedly, Shasta cannot show plaintiff had a *subjective* belief that his participation was an expectancy of the employment because, as a consequence of his injuries, plaintiff has no recollection whatsoever of the events of the day in question. However, it would be manifestly unfair to prohibit employees from obtaining workers' compensation benefits for injuries on the ground their memories have been destroyed by the very injuries for which they seek compensation. Moreover, the purpose of subdivision (a)(9) is served by objective evidence showing that a reasonable person in the circumstances would have such an expectancy. *Ezzy*'s subjective test is not found in the statute but is rather court-made law. (See *Ezzy, supra,* 146 Cal.App.3d at p. 260.) We conclude *Ezzy*'s subjective test should not be applied in the circumstances shown here. The uncontradicted evidence shows plaintiff has satisfied subdivision (a)(9). Shasta has therefore showed plaintiff has satisfied all conditions of compensation under section 3600.

### III

*Section 3601 does not authorize plaintiff's action for damages against Shasta.*

 Plaintiff contends section 3601 authorizes his action for damages against Shasta. We disagree.

Section 3601 provides certain exceptions to the rule that eligibility for workers' compensation benefits precludes an employee from maintaining an action at law for damages. Section 3601 allows one employee to maintain an action against another employee for damages "When the injury or death is proximately caused by the intoxication of the other employee." (§ 3601, subd. (a)(2).)

While section 3601 arguably allows plaintiff to sue Abbott, it does not allow an action for damages against Shasta, because subdivision (b) of section 3601 provides in pertinent part: "In no event, either by legal action or by agreement . . . shall the employer be held liable, directly or indirectly, for damages awarded against, or for a liability incurred by the other employee under paragraph . . . (2) of subdivision (a)." Subdivision (b) of section 3601 effectively bars plaintiff's action at law for damages against Shasta. (See *Iverson v. Atlas Pacific Engineering* (1983) 143 Cal.App.3d 219, 226 [191 Cal.Rptr. 696]; see generally *Pacific Gas & Elec. Co.* v. *Morse* (1970) 6 Cal.App.3d 707, 712-715 [86 Cal.Rptr. 7].)

CONCLUSION

Since the evidence shows without dispute that plaintiff satisfied the conditions of compensation in section 3600, plaintiff's exclusive remedy for his injuries is under the workers' compensation act; the motion for summary judgment was properly granted. (§ 3601, subd. (a); see *Halliman* v. *Los Angeles Unified School Dist., supra,* 163 Cal.App.3d at p. 52.)

DISPOSITION

The judgment is affirmed.

Carr, Acting P. J., and Sparks, J., concurred.