Filed 9/14/16  Cerda v. Target Corp. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JORDAN P. CERDA, a minor, etc. et al., | |
| Plaintiffs and Appellants, | G051377 |
| v. | (Super. Ct. No. 30-2013-00625762) |
| TARGET CORPORATION, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Linda Marks, Judge.  Affirmed.

Law Offices of John F. Gerard and John F. Gerard for Plaintiffs and Appellants.

Trachtman & Trachtman, Benjamin R. Trachtman, and Ryan M. Craig for Defendant and Respondent.

\*          \*          \*

This appeal arises from a wrongful death suit based on a tragic car accident. An intoxicated driver drove on the wrong side of State Route 91 for several miles before eventually striking another vehicle and killing two people. Family members of the decedents filed suit against the driver, the owner of the vehicle, and Target Corporation (Target), where the driver worked, and where the driver allegedly became intoxicated. This appeal concerns only Target. The court granted summary judgment in favor of Target, finding it was not liable in respondeat superior. Plaintiffs appealed, contending it is foreseeable that workers would secretly drink on the job, and thus a jury could conclude the driver's intoxication was incidental to his employment at Target. We disagree and affirm the judgment in favor of Target.

FACTS

Target is a retail provider of merchandise in brick-and-mortar stores and on the Internet. Anthony Louis Fragoso, the intoxicated driver in the fatal accident, worked at a Target Store in Long Beach as a salesman in the electronics department. Upon being hired, Fragoso was required to read and sign Target's policy prohibiting the possession and use of alcohol on the job or on paid breaks. Fragoso had a negative result for his pre-employment drug test. Target never furnished, supplied, or allowed employees to bring any alcohol to any Target-sponsored event, like a birthday party or holiday celebration. Target never supplied any alcohol to Fragoso. No complaints were ever received by Target management concerning Fragoso consuming alcohol or being under the influence. Fragoso's duties at Target did not include driving or the need to use a vehicle for work purposes.

On January 18, 2011, Fragoso began a shift at the Long Beach Target Store at 3:00 p.m. Another Target employee, Hugo Orozco, also started a shift that day at about the same time. Orozco met Fragoso for the first time that day and the two took

2

their meal break together at approximately 7:30 p.m. Fragoso did not appear intoxicated to Orozco during their first encounter. During their meal break, Fragoso bought a bottle of vodka, holding approximately 26.3 ounces, from a drugstore. Fragoso poured some vodka into cups obtained from Del Taco, where the two spent their meal break. Fragoso told Orozco that he would drink alcohol on the "sly" during his meal periods and kept it a secret from Target. On the return trip from Del Taco, Orozco did not think Fragoso was buzzed, impaired, drunk or driving erratically.

Fragoso's shift ended at around 11:30 p.m. that night and Orozco got a ride home from Fragoso. At that point, Fragoso did not appear intoxicated to Orozco. Once they got into Fragoso's vehicle, Fragoso took a "swig" of the vodka he had purchased earlier. The two then rode to the grocery store where Fragoso bought a six-pack of beer. Fragoso drank one and one-half beers as he was driving Orozco home. According to Orozco, Fragoso did not appear impaired in his driving on the way home. When Fragoso left Orozco's home at around 12:15 a.m. on January 19, he drove away slowly and stopped at a stop sign.

Approximately 45 minutes later, witnesses recounted seeing Fragoso driving in the wrong direction of traffic for several miles along State Route 91. He ultimately collided with a vehicle in which Alan Reyes and Vanessa Cease were driving, killing them both. Fragoso's blood was drawn at approximately 2:00 a.m. that morning and his blood alcohol content was approximately .23, which is the equivalent of 11.5 standard drinks. Fragoso ultimately pleaded guilty to two counts of felony vehicular manslaughter and, as of the filing of the summary judgment motion, was serving a prison term.

Plaintiff produced an expert who opined "that given the staggeringly high blood alcohol content . . . found in the analysis by the Orange County Crime Lab of Mr. Fragoso's hospital whole blood sample drawn at 2:00 a.m. on January 19, 2011 . . . following the accident which occurred at 12:50 a.m. on that date, Mr. Fragoso had to

3

have been drinking a substantial amount of alcohol during his work shift at Target Corporation . . . , and that the resulting impairment from such consumption of alcohol at work created a substantial risk of Mr. Fragoso engaging in unsafe behavior, including driving while impaired, after he left Target's premises." Plaintiffs also presented evidence that 15 percent of United States workers reported being impaired by alcohol on the job at least one time in the last year.

The court granted summary judgment in favor of Target, stating, "The . . . evidence sufficiently establishes that Fragoso did not have permission to consume alcohol on Target premises, there is no benefit to Target for Fragoso's alcohol consumption, and that the activities are not a customary incident of employment with Target." "The court finds that Target has met its burden of establishing that it cannot be held vicariously liable for Fragoso's wrongful, tortious and criminal conduct." Plaintiffs appealed from the judgment in favor of Target.

## DISCUSSION

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. [Citation.] We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.] In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists

4

as to that cause of action . . . .'" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477.)

The issue here is whether Target can be held vicariously liable for Fragoso's actions through respondeat superior. "The rule of respondeat superior is familiar and simply stated: an employer is vicariously liable for the torts of its employees committed within the scope of the employment." (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296.) "'A risk arises out of the employment when "in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. [Citations.] In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one 'that may fairly be regarded as typical of or broadly incidental' to the enterprise undertaken by the employer. [Citation.]'" [Citations.] [¶] Tortious conduct that violates an employee's official duties or disregards the employer's express orders may nonetheless be within the scope of employment. [Citations.] So may acts that do not benefit the employer [Citation], or are willful or malicious in nature [citations]." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 209.)

However, "[t]hat the employment brought tortfeasor and victim together in time and place is not enough. We have used varied language to describe the nature of the required additional link (which, in theory, is the same for intentional and negligent torts): the incident leading to injury must be an 'outgrowth' of the employment [citation]; the risk of tortious injury must be '"inherent in the working environment"' [citation] or '"typical of or broadly incidental to the enterprise [the employer] has undertaken."' [Citation.] [¶] Looking at the matter with a slightly different focus, California courts have also asked whether the tort was, in a general way, foreseeable from the employee's duties. Respondeat superior liability should apply only to the types of injuries that are '"as a practical matter are sure to occur in the conduct of the employer's enterprise."'

5

[Citation.]  The employment, in other words, must be such as predictably to create the risk employees will commit . . . torts of the type for which liability is sought." (*Lisa M. v. Henry Mayo Newhall Memorial Hospital*, *supra,* 12 Cal.4th at pp. 298-299.)

"Ordinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law, however, when 'the facts are undisputed and no conflicting inferences are possible.' [Citation.]  In some cases, the relationship between an employee's work and wrongful conduct is so attenuated that a jury could not reasonably conclude that the act was within the scope of employment." (*Mary M. v. City of Los Angeles, supra*, 54 Cal.3d at p. 213.)

The fundamental problem with plaintiffs' case is they have supplied no facts suggesting that Fragoso's drinking, and the resulting vehicle collision, was incidental to his work at Target.  Drinking was prohibited at Target, Fragoso drank in secret, and nothing about Fragoso's role at Target would make drinking an incident of the job, or would make drunk driving a foreseeable occurrence.  Drunk driving simply is not incidental to being an electronics salesperson.

Plaintiffs only fact is that, according to government statistics, 15 percent of the American work force admitted to being intoxicated on the job at least once in the prior year.  From this, plaintiffs conclude Fragoso's intoxication on the job, and the resulting drunk driving, are foreseeable incidents of Fragoso's work at Target.  In support of this argument, plaintiffs cite a number of cases, including *Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962 (*Perez*), where the court stated, "'[W]here the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly or indirectly could he have been serving his employer.'" (*Id*. at p. 970.)  Plaintiffs contend that, under this standard, Fragoso's drinking on the job while also performing his regular

6

work duties renders Target liable for the drinking. But none of the cases plaintiffs rely on support that proposition.

In *Perez* a tractor driver invited his nephew to ride along with him while he performed his work. The tractor was not meant for two people, however, and the nephew ended up falling off and getting hurt. The nephew sued the employer, who responded by arguing the driver violated a company rule against having passengers. (*Perez*, *supra*, 41 Cal.3d at p. 965.) The court held the employer was liable because the driver was "principally engaged in disking [the tractor operation], his employer's business." (*Id.* at p. 967.) Unlike *Perez*, here Fragoso did not injure anyone while principally engaged in his activities as an electronics salesperson.

In *Childers v. Shasta Livestock Auction Yard, Inc.* (1987) 190 Cal.App.3d 792, plaintiff was injured when a manager gave certain employees, including plaintiff, the key to the business facility and instructed them to "go have a beer" after hours at the business office where alcohol was stored. The employees, including plaintiff, got drunk and then drove a company vehicle to feed some horses. The employee driving the vehicle was drunk, crashed the vehicle, and injured plaintiff, who was a passenger. Consuming alcohol was a regular practice at the business for its customers and employees. (*Id.* at p. 799.) *Childers* is obviously distinguishable.

In *Trejo v. Maciel* (1966) 239 Cal.App.2d 488 (*Trejo*) plaintiffs' vehicle was struck by a drunk driver. (*Id.* at p. 490.) The driver was on a special errand in which the president of a liquor supply company asked the driver to pick up some liquor from one store and deliver it to another. (*Id.* at pp. 492-493.) The president knew the driver had a history of alcohol abuse. (*Id.* at p. 493.) After delivering the liquor, the driver visited his ex-wife who lived nearby, and then left to return home, at which point he got in the accident. (*Id.* at p. 494.) Under the special errand doctrine, as recited by the court, "An employee who has gone upon a special errand does not cease to be acting in the course of his employment upon his accomplishment of the task for which he was sent.

7

He is in the course of his employment during the entire trip." (*Id.* at p. 495.) The question on appeal was whether the diversion to his ex-wife's house ended the trip, and thus ended the company's liability. (*Ibid.*) The court concluded the jury had been inadequately instructed on the termination of the special errand and thus ordered a new trial. (*Id.* at p. 498-499.) *Trejo* is inapplicable here as Fragoso was not on a special errand when he collided with the decedents' vehicle.

Ultimately, plaintiffs' argument is too broad. If we were to accept it, the result would be that *all* employers would be held liable for torts arising from drinking on the job, no matter how attenuated the injury may be to the particular employment, and no matter what measures the employer may have taken to prevent it. While the concept of the scope of employment has been interpreted broadly in this state, plaintiffs' argument would render that requirement meaningless, and we decline to adopt it.

Much of plaintiffs' briefing is occupied with arguing the trial court employed the wrong standard in deciding whether Fragoso's drinking was within the scope of his employment. In particular, plaintiffs claim the trial court used the test that applies to activities, including drinking, that occur *after* working hours. "[A] risk created by after-work recreational or social activities is 'of industrial origin' . . . 'where social or recreational pursuits on the employer's premises after hours are endorsed by the express or implied permission of the employer and are "conceivably" of some benefit to the employer *or*, even in the absence of proof of benefit, if such activities have become "a customary incident of the employment relationship," an employee engaged in such pursuits after hours is still acting within the scope of his employment.'" (*Childers v. Shasta Livestock Auction Yard, Inc.*, *supra*, 190 Cal.App.3d at p. 804.) Plaintiffs claim the following comments from the court demonstrate it was employing this more stringent test: "Fragoso did not have permission to consume alcohol on Target premises, there is no benefit to Target for Fragoso's alcohol consumption."

8

However, "'[w]e need not defer to the trial court and are not bound by the reasons for the summary judgment ruling; we review the ruling of the trial court, not its rationale.'" (*Daly v. Yessne* (2005) 131 Cal.App.4th 52, 58.) Since we have already determined that the judgment was correct under the proper legal standard, we need not attempt to construe what test the court was using.

## DISPOSITION

The judgment is affirmed. Target shall recover its costs incurred on appeal.


IKOLA, J.

WE CONCUR:


ARONSON, ACTING P. J.


THOMPSON, J.

9